**UNITED STATES of America**

v.

**Micha Cheryl WHEELER.**

**No. C–CR–90–07–02.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 18, 1990.

---

H. Thomas Church, Asst. U.S. Atty., for plaintiff.

James F. Wyatt, III, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on a Memorandum and Recommendation (hereinafter "M & R") filed by United States Magistrate Paul B. Taylor on May 4, 1990.

Defendant timely filed objections to the M & R on May 17, 1990.

The M & R is in response to Defendant's motion, filed February 9, 1990, to suppress approximately 847.3 grams of cocaine and 13 grams of crack seized from Defendant's person on December 13, 1990 at the Charlotte airport. On February 23, 1990, the Government filed a response to Defendant's motion. The Magistrate conducted a hearing to consider arguments from the parties on April 30, 1990.

Title 28, United States Code, Section 636(b) permits the Court to designate a magistrate to conduct hearings and to submit to the Court proposed findings of fact and recommendations for the disposition by the Court of any motion to suppress or dismiss a bill of indictment. The magistrate is required to file his proposed findings and recommendations with the Court. Within ten (10) days after being served with a copy, any party may file written objections to the proposed findings and recommendations. The Court must then make a de novo determination of those portions of the proposed findings or recommendations to which objection is made. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The Court may also receive further evidence or recommit the matter to the magistrate with instructions.

In conducting its de novo review, the Court has carefully considered the entire record in this matter. In particular, the Court has reviewed Defendant's motion to suppress, the Government's response to that motion, the M & R, and Defendant's objections to the M & R. Additionally, the Court has considered the applicable law. Finally, the Court has listened to the audio tape of the April 30, 1990 hearing.

Based on the Court's review, it appears that there is little factual dispute in this case. For the sake of clarity, the Court will briefly summarize the relevant facts.

On December 13, 1989, Officers Sennett and Ballas were conducting narcotics surveillance at the Charlotte airport. At 3:00

p.m., the officers observed co-Defendant Marlon Anthony Williams depart a plane originating from New York City—a source city of drugs. Williams fit several characteristics of the drug courier profile including wearing gold jewelry and an expensive leather coat, being one of the last passengers to deplane, staring at the officers, and purchasing the ticket with cash on the same day of the departure. The officers also observed Defendant deplane shortly after Williams and then apparently follow him as he walked down the concourse.

Based on those observations, the officers approached Williams and asked him several questions. Williams then consented to a search of his person and his bag. No controlled substances were found. However, it was the officers' experience that males acting as lookout often accompany female drug couriers. Therefore, the officers left Williams (without arresting him at that time) to attempt to locate Defendant.

At 3:20 p.m., the officers located Defendant in an airport restaurant situated directly off of a main concourse. Defendant was seated at a table near the entrance eating a meal. The officers, who were dressed in street clothes with no indication of them being police officers, approached Defendant and identified themselves. The officers asked if they could speak with Defendant and she responded, "Yes". Without blocking her access to the restaurant exit, the officers asked if they could examine her airline ticket. Defendant handed the ticket to the officers who observed that the ticket had been purchased the same day and paid for in cash. The ticket was for travel from New York City to Charlotte and then to Roanoke, Virginia, the same locations as Williams. The officers noticed that Defendant's forehead was sweating profusely, that her hands shook, and that she appeared very nervous.

After asking several questions in a polite, conversational tone, the officers asked Defendant if she would consent to a search of her person and bag. At this point, Defendant became visibly agitated and began talking louder and louder. After Defendant stated she would consent to a search

by a female officer who was on her way, Defendant without prompting pulled both lapels of her jacket out and stated she did not have anything under her jacket. The officers immediately noticed in plain view an obvious bulge that did not appear to be part of her anatomy protruding from Defendant's tight sweat pants on the left side of her hip. Defendant, in claiming that there was not anything there, stated, "No, that's all me. I'm just fat."

Thereafter, Defendant stated that if the officers wished to search her that they would have to arrest her. Defendant exited the restaurant and entered a rest room. Because the officers feared Defendant would flush the contents of the bulge down the toilet, the officers followed her into the rest room. After a brief struggle in which Defendant yelled, "Rape! He's going to get me!", the officers detained her. A search of her person revealed the bulge was 847.3 grams of packaged cocaine and 13 grams of crack. Defendant was then arrested and read her Miranda warnings. Defendant waived her rights and admitted that she was transporting the drugs for Williams.

Defendant's primary objection to the M & R centers on the Magistrate's conclusion that Defendant was not seized until the officers observed the bulge. Defendant contends that she was seized as soon as the officers began speaking to her in the restaurant. Defendant argues that her freedom of movement was restrained because a reasonable person would not have felt free to leave the restaurant in the middle of a meal with two officers speaking to her.

The Court agrees with the Magistrate that the officers' conduct in this situation was reasonable and that the seizure did not occur until after the officers observed the bulge in plain view. Accordingly, the Court will affirm the M & R in its entirety for the reason stated therein. However, because it appears that the issue of brief, consensual stops in airport restaurants is a case of first impression in this district and the Fourth Circuit, the Court has entered this order to clarify the legal status of such stops in this district.

The Court believes the questioning of Defendant in the airport restaurant was reasonable. *See Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983) (establishing that no fourth amendment violation occurs by approaching individual in *public* place and asking if he is willing to answer some questions). Defendant was free to refuse to cooperate or leave the restaurant at anytime prior to the officers' plain view observation of the bulge. *See United States v. Lehmann,* 798 F.2d 692, 694 (4th Cir.1986) (defendant not seized when stopped in airport parking lot because he was free to refuse the initial request for questioning); *accord United States v. Alpert,* 816 F.2d 958, 959 (4th Cir.1987) (initial stop of defendant outside airport bar was reasonable). The officers did not block her access to the restaurant exit. *See United States v. Flowers,* 724 F.Supp. 1206, 1208 (W.D.N.C.1989) (indicating that as long as bus aisle was not blocked by officers, that reasonable person would feel free to leave); *see also United States v. Hammock,* 860 F.2d 390 (11th Cir.1988). Accordingly, the Court concludes that the questioning of Defendant did not amount to a seizure for purposes of the Fourth Amendment and that the officers were entitled to seek Defendant's voluntary cooperation.

Despite Defendant's contentions to the contrary, the Court sees little difference between the restaurant and the airport concourse. According to the uncontested testimony of the officers at the hearing regarding the physical location of the restaurant, it was directly off the concourse. Obviously, access in and out of the restaurant was not difficult as evidenced by Defendant's unhindered ability to leave after the observation by the officers of the bulge. Therefore, the Court believes such approaches by officers are consistent with established law regarding stops in airport concourses.

Regarding the statements made by Defendant, the Court without further comment affirms the Magistrate's holding.

NOW, THEREFORE, IT IS ORDERED that the M & R be ADOPTED AND AFFIRMED in its entirety.

IT IS FURTHER ORDERED THAT Defendant's motion to suppress drugs and statements be DENIED.