UNITED STATES of America

v.

**Rosa RODRIQUEZ.**

No. C–CR–90–95.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Nov. 7, 1990.

Thomas J. Ashcraft, Charlotte, N.C., for plaintiff.

Calvin E. Murphy, David R. Caudle, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on a Memorandum and Recommendation, filed 24 September 1990, by United States Magistrate Paul B. Taylor.

Magistrate Taylor entered the above noted Memorandum and Recommendation in response to Defendant's Motion to Suppress filed 1 August 1990. By her Motion, Defendant seeks suppression of the following:

1) a 9mm pistol and 275 grams of crack cocaine seized from her purse; and

2) an additional five grams of crack cocaine seized from her person.

Officers of the Charlotte Police Department seized these items subsequent to the stop of a vehicle in which Defendant was a passenger. This stop occurred on 1 June 1990.

Magistrate Taylor conducted a hearing regarding this matter on 23 August 1990.

On 4 October 1990, this Court received the timely objections of the United States Government to the Magistrate's recommendation that Defendant's Motion to Suppress be granted. On 16 October 1990, Defendant submitted a response to the Government's objections.

This matter is now properly before the Court pursuant to Title 28, United States Code, Section 636(b). Section 636(b) permits the Court to designate a Magistrate to hear Motions to Suppress. In addition, the statute provides that the Court must make a de novo review of those portions of the Magistrate's Memorandum and Recommendation to which objection is made. Upon completion of this review, the Court may accept, reject, or modify the findings or recommendations of the Magistrate. Here, the Government filed specific objections to the Magistrate's Memorandum and Recommendation. Accordingly, the Court conducted a de novo review of the entire record in this matter. The Court reviewed the file, read the Memorandum and Recommendation, read the Government's Objections and Memorandum of Law, read Defendant's Response, and read the transcript from the Suppression Hearing. In addition to reviewing the record, the Court has studied the relevant law. Having done so, the Court is convinced Defendant's Motion to Suppress is without merit. Therefore, the Court will reverse and reject, in relevant part, the Magistrate's Memorandum and Recommendation.

In the interest of clarity, the Court will address each component of the Magistrate's Memorandum and Recommendation separately.

## I. FINDINGS OF FACT

The Government concedes that the Magistrate's findings of fact are generally accurate. However, the Government argues that the Magistrate's findings erroneously conclude that Charlotte Police Officer Tom Hazelton discovered crack cocaine and a 9mm pistol in Defendant's purse as a direct result of his search and arrest of Defendant rather than as a result of his arrest of Shawn Torres. In addition, the Govern-

ment argues that Magistrate Taylor's findings of fact fail to reflect that the entire episode in question was "permeated by serious and well-founded security concerns for the police officers." Memorandum of Law for Government at 1.

As to the Government's first objection, the Court finds that the Memorandum and Recommendation accurately recounts the events leading to the search and seizure of Defendant's purse. As such, a lengthy statement of these facts is not necessary here. It is sufficient to note that Officer Hazelton did not discover or search Defendant's purse until *after* performing a cursory search of the back seat of the vehicle and arresting Shawn Torres for carrying a concealed firearm. *See* Transcript of Motion to Suppress Hearing of 23 August 1990, at 25–31 (hereinafter "Transcript"). The plain import of this sequence of events is that the search of Defendant's purse was but one element of a comprehensive search of the vehicle in which Defendant was a passenger. *See* Transcript at 31.

The Government next objects that Magistrate Taylor's findings fail to reflect that the Officers viewed the stop of the vehicle as fraught with danger. The Court finds that the Memorandum and Recommendation—in part—accurately recounts the circumstances surrounding the stop. In particular, Magistrate Taylor notes that:

> Officer Hazelton further testified that when he stopped the Defendant's car, he and the other officers had their guns drawn and pointing at the occupants of the vehicle. Officer Hazelton stated that this is standard operating procedure whenever vice officers stop a car they believe to be involved with drugs, because of the likelihood of the drug suspects themselves carrying guns. Officer Hazelton was also aware that on a previous occasion involving undercover drug deals at 1608 Northcliff Drive, Officer Bailey had seen guns.

Memorandum and Recommendation at 7; *see also* Transcript at 73–77. The Court finds that this account, with its emphasis on "standard operating procedure," fails to fully convey the atmosphere surrounding

the stop in question. In addition to the testimony noted by Magistrate Taylor, Officer Hazelton testified that the occupants of the car, including Defendant, were required to exit the car with their hands raised. Transcript at 24. Further, Officer Hazelton testified that he had ongoing security concerns regarding the entire stop. Transcript at 76–77. It is apparent the Officers here had entirely justified concerns for their safety. To the limited extent the Memorandum and Recommendation fails to reflect this, it is in error.

## II. CONCLUSIONS OF LAW

By her Motion, Defendant makes three separate arguments. First, Defendant argues that the Officers did not have a reasonable suspicion to justify a forcible stop of the vehicle in which Defendant was a passenger. Second, Defendant argues that the seizure of the contents of her pocket when she stepped out of the car—prior to her arrest and prior to a frisk for weapons—constituted an unreasonable search and seizure. Finally, Defendant argues that the search and seizure of the contents of her purse was likewise unreasonable. The Court will address each of Defendant's three arguments separately.

### A. The Stop of the Vehicle

The Government filed no objections to Magistrate Taylor's Conclusions of Law regarding the stop of the vehicle in which Defendant was a passenger. Even so, the Court has reviewed this portion of the Memorandum and Recommendation and finds it to be an accurate statement of the law. As such, the Court will adopt and accept this portion of the Magistrate's Memorandum and Recommendation.

### B. The Seizure of Evidence from Defendant's Pocket

The Government filed general objections to the Magistrate's conclusion that the seizure of evidence from Defendant's pocket was unreasonable. In addition, the Government specifically objects to the Magistrate's conclusion that there existed a causal link between the Officer's miscon-

duct and the evidence ultimately seized. Finally, the Government also specifically objects that Magistrate Taylor erroneously evaluated the events in question from the subjective viewpoint of Officer Hazelton. In contrast, the Government argues that Magistrate Taylor should have evaluated Officer Hazelton's conduct from an objective standard.

Magistrate Taylor found that the seizure of which Defendant complains cannot be distinguished from that which occurred in *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). There, a police officer spent the day observing Sibron talk with known drug dealers in an area known for drug dealing. Ultimately, the officer confronted Sibron, demanding "You know what I am after." *Id.* at 45, 88 S.Ct. at 1894. Sibron responded by reaching into his pocket. The officer immediately thrust his hand into the same pocket and retrieved heroin. *Id.* The Supreme Court held that this search was "not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man." *Id.* at 65–66, 88 S.Ct. at 1904. Given this, the Court held the search violative of the Fourth Amendment. *Id. Cf. Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (limited search of outer clothing to discover concealed weapons constitutionally permissible even absent probable cause to arrest).

■ After careful consideration, this Court finds that *Sibron* is applicable to the seizure here at issue. As in *Sibron*, the Officer here reached directly into Defendant's pocket—knowing full well that no weapon was there. Indeed, Officer Hazel-

ton testified that he believed the lump to be cocaine and intended to retrieve it. Transcript at 25. This is precisely the sort of action condemned in *Sibron*.

■ The Government argues forcefully that *Sibron* is distinguishable because the Officer there had no cause to fear the defendant[1]. Here, the Government asserts Officer Hazelton had valid security concerns and reasonably feared Defendant might be armed. This distinction proves too much. This Court does not doubt that Officer Hazelton reasonably viewed Defendant as a threat. Even so, the plain teaching of *Terry v. Ohio* is that the proper response to such a threat is a limited search or frisk of the defendant's outer clothing in order to discover concealed weapons. *Terry*, 392 U.S. at 33, 88 S.Ct. at 1886; *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). Clearly, that was neither the scope nor the objective of the search here[2].

■ It is not enough, however, to say that *Sibron* applies here. There is more to the inquiry: for while the cocaine seized from Defendant's pocket is inadmissible under *Sibron*, that is not to say it is not admissible upon other grounds. Specifically, this Court finds that the cocaine seized from Defendant's pocket would inevitably have been discovered—even absent the initial seizure by Officer Hazelton. As such, the seizure of this cocaine is square within the inevitable discovery exception to the exclusionary rule. *See Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

The inevitable discovery exception has a clear purpose: "to block setting aside con-

---

1. The Government also argues that the seizure here is analogous to seizures upheld in cases involving airport stops of drug couriers. *See e.g., United States v. Wheeler*, 737 F.Supp. 34 (W.D.N.C.1990) (Defendant arrested after Officers observed suspicious bulge in her sweat pants). On the facts of this case, where the Officer saw only a small, inconspicuous bulge, this Court is unwilling to accept the Government's analogy.

2. The Government argues that Officer Hazelton's conduct should be evaluated objectively

rather than subjectively. It is true that police behavior is best judged by an objective standard. *See e.g., Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). However, this Court finds that Officer Hazelton's conduct runs afoul of *Sibron* even if viewed from an objective standard. More important, this Court finds that the distinction between an objective and a subjective standard is unimportant to the outcome of this case. Therefore, the Court will not further address this issue.

victions that would have been obtained without police misconduct." *Nix,* 467 U.S. at 445 n. 4, 104 S.Ct. at 2509, n. 4. As such, the inevitable discovery exception is but another method by which courts insist that there must be some causal link between unconstitutional police conduct and the evidence sought to be suppressed. *See e.g., United States v. Clark,* 891 F.2d 501, 505 (4th Cir.1989) ("Even when a fourth amendment violation has concededly occurred, evidence challenged on a suppression motion will not be excluded unless a causal relationship exists between that particular violation and the discovery of the evidence sought to be excluded"). Here, a review of the circumstances surrounding Defendant's arrest illustrates that the seizure of cocaine from Defendant's pocket would have inevitably occurred even absent the initial misconduct by Officer Hazelton [3].

The relevant circumstances surrounding Defendant's arrest may be summarized as follows. On 1 June 1990, Defendant was a passenger in a car stopped by Charlotte Police Officers after that car left a known crack house. Transcript at 22–25. The Police had an arrest warrant for the owner of the car, Thomas Garvin. *Id.* at 8. Further, the officers were aware that undercover officers had previously seen weapons inside the crack house. *Id.* at 75–77. After stopping the car, the Officers approached with their guns drawn and ordered Defendant, the driver, and another passenger out of the car. *Id.* at 24. As soon as Defendant stepped out of the car, Officer Hazelton reached into her pocket and seized a plastic bag containing five grams of crack cocaine. *Id.* at 25. Officer Hazelton then arrested Defendant, and sent her to an awaiting squad car. *Id.* at 27. Officer Hazelton then began a conversation with Shawn Torres, who had been sitting in the back seat of the car just stopped. *Id.* Officer Hazelton told Mr. Torres he was going to look into the car. Mr. Torres did not reply. *Id.* at 28. Officer Hazelton then proceeded to glance into the interior of the car. On the floorboard of the back seat, he observed in plain view the barrel of a handgun, the rest of which was covered by papers. *Id.* At that time, Officer Hazelton arrested Torres for carrying a concealed weapon. *Id.* Following the arrest of Torres, Officer Hazelton continued his search of the interior of the car. On the front seat, he observed two purses—one on each side of the seat. *Id.* at 28–29. The purse next to where Defendant had been seated was open, allowing Officer Hazelton to see within it a large plastic trash bag. *Id.* at 48. Upon opening the trash bag, Officer Hazelton discovered 275 grams of crack cocaine. *Id.* at 28–30. After making this discovery, Officer Hazelton removed the trash bag from Defendant's purse. He then observed a loaded 9mm pistol in the bottom of the purse. *Id.* at 30. He also found in the purse identification papers belonging to Defendant. *Id.*

Given the above sequence of events, it is clear Defendant would ultimately have been searched, quite apart from the initial seizure of cocaine from her pocket. When the Officers stopped the car, they had a reasonable belief the occupants were armed.[4] As such, the Officers were entitled to conduct a brief *Terry* type

---

**3.** The Court thus agrees with the Government that no causal connection exists between Officer Hazelton's misconduct and the evidence here at issue.

**4.** Officer Hazelton testified on cross-examination that he did not believe Defendant possessed a weapon while she stood outside the car. He further testified that he had no information about the criminal history of any of the occupants of the car. Transcript at 75–76. However, he also testified that he had security concerns about the entire event involving Defendant. Given that Officer Hazelton knew drug dealers are frequently armed, and that he knew guns had been seen in the house Defendant left only moments before being stopped, the Court finds that it was entirely reasonable for Officer Hazelton to fear for his safety. As the *Terry* Court noted "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883. Further, the fact that Officer Hazelton did not believe Defendant possessed a weapon while standing outside the car is wide of the mark: the central theme of *Chimel, Belton,* and *Long* is that suspects are dangerous as long as there is a possibility they might *reach* a weapon. Certainly, that possibility existed here.

search of the interior of the automobile in an effort to discover weapons. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). In fact, Officer Hazelton began conducting such a search after talking with Shawn Torres. That he happened to do so after seizing cocaine from Defendant is of no moment—the search he conducted was unrelated to that seizure. Transcript at 25–31. If instead of approaching Defendant first, Officer Hazelton—as he was entitled to do—instead first briefly searched the car's interior, he would have discovered the handgun in plain view on the floor board. Further, he would have discovered the purses on the front seat, and would have had the right to examine their contents as well. *See Belton*, 453 U.S. at 460, 101 S.Ct. at 2864; *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Upon doing so, Officer Hazelton would have discovered both the crack cocaine and the 9mm pistol belonging to Defendant. Officer Hazelton would then have had probable cause to arrest Defendant, and subject her to a full-scale search incident to a lawful arrest. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *United States v. Romero*, 692 F.2d 699 (10th Cir. 1982). He would have then discovered the crack cocaine in her pocket.

■ The inevitable discovery exception to the exclusionary rule is grounded in reasonableness. It merely reflects the underlying purpose of the exclusionary rule: the deterrence of illegal police conduct in the search for evidence. Therefore, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis

that the evidence should be received. Anything less would reject logic, experience, and common sense." *Nix*, 467 U.S. at 444, 104 S.Ct. at 2509. The exclusionary rule is meant to put the prosecution in the *same* position it would occupy had the police misconduct not occurred. *Id.* at 443, 104 S.Ct. at 2508–09. Here, had Officer Hazelton not first seized cocaine from Defendant's pocket, he nevertheless would have ultimately arrested and searched her. To exclude the cocaine seized from her pocket ignores this reality. To do so puts the Government not in the same position, but in a position far worse than the one they would occupy but for the error. *Nix* plainly teaches that this result is fundamentally at odds with our society's interest in justice. *Id.* This Court will not turn a blind eye to "logic, experience, and common sense"—nor will it spurn justice. This Court will not exclude this evidence.

### C. The Seizure of Evidence from Defendant's Purse

■ The Court finds that the above discussion of the inevitable discovery exception applies with equal force to the evidence taken from Defendant's purse. Officer Hazelton's decision to search the automobile interior was independent[5] of his seizure of crack cocaine from Defendant. As noted earlier, Officer Hazelton had the right to conduct a protective search of the automobile interior. Even the most cursory of searches would have revealed Defendant's purse. Inevitably, Officer Hazelton would have discovered the crack cocaine and pistol in Defendant's purse. As such, both are admissible into evidence.

### CONCLUSION

In the end, the exclusionary rule must be applied with a clear view of its purposes.

---

5. Arguably, the contents of both Defendant's pocket and purse could come in under the independent source exception to the exclusionary rule. That exception, which is very closely related to the inevitable discovery rule, simply "allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 2508–09, 81 L.Ed.2d 377 (1984). In both instances, the search of the automobile's interior by Officer Hazelton would serve as an independent source of discovery. While the Court finds that both the inevitable discovery exception and the independent source exception apply here, it has chosen to focus on the inevitable discovery exception since that exception is most forcefully put forth by the Government.

**1278**

Application of the rule should fairly balance the "interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime." *Nix*, 467 U.S. at 443, 104 S.Ct. at 2509. Above all, the rule is to be applied in a reasonable manner. To exclude the evidence at issue here is neither reasonable nor wise.

NOW, THEREFORE, IT IS ORDERED that the Magistrate's Memorandum and Recommendation, filed 24 September 1990, is ACCEPTED IN PART and REVERSED IN PART.

IT IS FURTHER ORDERED that Defendant's Motion to Suppress, filed 1 August 1990, be, and hereby is, DENIED.