STATE OF NORTH CAROLINA v. GARY FRANCES MELLO

No. COA08-1052

(Filed 3 November 2009)

**1. Search and Seizure— investigatory stop of vehicle—findings—evidence supporting**

There was sufficient evidence in a narcotics prosecution to support the findings made by the trial court when upholding an investigatory stop of defendant's vehicle.

**2. Search and Seizure— investigatory stop—reasonable suspicion**

The trial court in a narcotics prosecution correctly concluded that an officer had reasonable suspicion for an investigatory stop of defendant's vehicle.

Judge HUNTER, JR., Robert N., dissenting.

Appeal by defendant from order entered 26 September 2007 by Judge Steve A. Balog and judgment entered 10 December 2007 by Judge V. Bradford Long in Forsyth County Superior Court. Heard in the Court of Appeals 7 April 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Glover & Peterson, P.A., by James R. Glover, for Defendant.*

ERVIN, Judge.

On appeal, Gary Frances Mello (Defendant) challenges the order entered by Judge Steve A. Balog (trial court) on 26 September 2007 denying his motion to suppress evidence seized during a traffic stop. For reasons set forth below, we find no error.

Factual Background

By 26 August 2006, Officer J.R. Pritchard had been employed by the Winston-Salem Police Department for about two and a half years. After completing Basic Law Enforcement Training, Officer Pritchard had received training in making drug arrests that included participating in numerous investigations with training officers. Officer Pritchard had made many arrests for drug violations and had conducted drug surveillance activities.

At approximately 10:30 a.m. on 26 August 2006, Officer Pritchard was patrolling the area of Chandler and Amanda Place when he observed a vehicle driven by Defendant stop about fifteen to twenty yards away. At that time, Officer Pritchard watched "two other individuals approach the vehicle putting their hands into the vehicle;" however, he did not see any exchange or transfer of money. Officer Pritchard had not previously seen Defendant, but he recognized the two men standing outside the vehicle. He did not, however, know their names or whether he had previously arrested them. Officer Pritchard characterized the area of Chandler and Amanda Place as "a very well-known drug location" where he had previously made drug-related arrests.

Based on his observation of the interaction between Defendant and the two individuals who approached his vehicle, Officer Pritchard suspected that he had witnessed a "drug transaction," something he had seen on numerous prior occasions. After seeing the episode at Defendant's automobile, Officer Pritchard drove a short distance before turning around. At that point, the two individuals fled the area, with one of them quickly entering a house. In addition, Defendant started driving away from the area in the opposite direction from that in which Officer Pritchard was traveling. According to Officer Pritchard, Defendant did not commit any traffic offense as he attempted to drive away. Officer Pritchard turned around again and stopped Defendant's vehicle. Defendant pulled over about a quarter of a mile after Officer Pritchard activated his blue light.

After he stopped Defendant's vehicle, Officer Pritchard approached the automobile and ascertained that Defendant was in the driver's seat and that there was a passenger named Robin Laughlin in the passenger seat. As he began to converse with Defendant, Officer Pritchard noticed that Defendant was clutching a white, rocklike substance. Defendant threw the substance to the floor. Subsequent testing revealed the substance to be .2 grams of cocaine base. In addition, Officer Pritchard recovered what he believed to be a crack pipe from Defendant's vehicle.

## Procedural History

On 26 August 2006, a Magistrate's Order was issued charging Defendant with felonious possession of cocaine and possession of drug paraphernalia. On 26 February 2007, the Forsyth County grand jury returned a bill of indictment charging Defendant with felonious possession of cocaine and possession of drug paraphernalia.

STATE v. MELLO

[200 N.C. App. 437 (2009)]

On 16 April 2007, Defendant filed a motion to suppress the evidence obtained from his traffic stop on 26 August 2006. A hearing on Defendant's suppression motion was held on 31 August 2007. On 26 September 2007, the trial court entered an order denying Defendant's suppression motion.

On 10 December 2007, Defendant entered a plea of guilty to felonious possession of cocaine and possession of drug paraphernalia before Judge Long. Before entering his guilty plea, Defendant reserved the right to appeal the denial of his suppression motion to this Court. Based upon his guilty plea, Judge Long determined that Defendant was a Level III offender given that he had accumulated 5 prior record level points, that Defendant should be sentenced in the presumptive range, and that the two offenses for which Defendant had pled guilty should be consolidated for judgment. After Defendant declined a probationary sentence, Judge Long ordered that Defendant be imprisoned for a minimum term of 5 months and a maximum term of 6 months imprisonment in the custody of the North Carolina Department of Correction. Defendant gave notice of appeal to this Court from the judgment entered by Judge Long.

Analysis

In his only challenge to his convictions and sentence, Defendant asserts that Officer Pritchard lacked the reasonable suspicion of criminal activity needed to conduct a valid investigatory stop of his vehicle on 26 August 2006 so that the trial court erred in denying his motion to suppress the evidence seized as a result of that stop. After carefully examining the trial court's order denying Defendant's motion to suppress in light of the evidentiary record and the applicable law, we disagree.

"[T]he scope of appellate review of [a denial of a motion to suppress] is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). A trial court's factual findings are binding on appeal "if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Adams v. Tessener*, 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001) (citations omitted). We review the trial court's conclusions of law *de novo. State v. Edwards*, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648, *disc. review denied*, 362 N.C. 89, 656 S.E.2d 281 (2007). Based on this standard of review, we turn our attention to the

findings of fact and conclusions of law contained in the trial court's order denying Defendant's motion to suppress.

In denying Defendant's suppression motion, the trial court made the following findings of fact:

1. Officer J[.] R[.] Pritchard has been an officer in the Winston-Salem Police Department for 3.5 years.

2. Officer Pritchard has had training in drug arrests and surveillance of drug activity.

3. Officer Pritchard has made numerous drug arrests.

4. Officer Pritchard has, in his duties, regularly patrolled the area of Chandler and Amanda Place.

5. Officer Pritchard has made drug arrests at Chandler and Amanda Place and has assisted other officers in making drug arrests at Chandler and Amanda Place, as well.

6. On August 26, 2006, Officer Pritchard was on duty and routine patrol in the area of Chandler and Amanda Place.

7. From training and experience, Officer Pritchard knew the area of Chandler and Amanda Place to be a well known drug location with high drug activity.

8. On August 26, 2006[,] at 10:30 a[.]m[.], Officer Pritchard drove by a motor vehicle operated by the Defendant. Officer Pritchard passed within 15-20 yards of the Defendant, traveling 10-15 MPH.

9. Officer Pritchard observed Defendant's vehicle stationary on Amanda Place, and saw two individuals on foot approach the driver's side of the Defendant's vehicle where the Defendant was located.

10. The two individuals inserted their hands into the Defendant's vehicle. Officer Pritchard did not see any object or money in their hands, nor did he observe any direct exchange between the individuals and the Defendant or any other persons in the car.

11. After brief contact, these individuals left the Defendant's car.

12. Officer Pritchard had not seen the Defendant before. He had seen the two pedestrians before. Their faces were familiar, but he did not know their names.

13. Officer Pritchard suspected it was a drug transaction in which the Defendant had been involved and had observed numerous similar drug transactions in the past.

14. Officer Pritchard turned his car around and saw the two individuals on foot flee the area, one going into a nearby house.

15. As Officer Pritchard came back down the street, he observed the Defendant moving in the opposite direction. Officer Pritchard initiated a traffic stop of the Defendant.

16. Officer Pritchard did not suspect that Defendant had committed any traffic violations.

17. After stopping the Defendant and making contact, Officer Pritchard seized the objects that are the subject of the Defendant's motion to suppress.

Based on these findings of fact, the trial court concluded as a matter of law that, "[u]nder the totality of the circumstances, Officer Pritchard had reasonable suspicion based on articulable facts that to an officer of his experience and training would lead him to believe that the Defendant was involved in a drug transaction and was therefore justified in making an investigatory stop of the Defendant's vehicle." In light of these findings of fact and conclusions of law, the trial court denied Defendant's motion to suppress.

### Sufficiency of the Evidence to Support the Findings of Fact

[1] First, Defendant challenges the sufficiency of the evidentiary support for Findings of Fact Nos. 13 and 14, which provide that:

13. Officer Pritchard suspected it was a drug transaction in which the Defendant had been involved and had observed numerous similar drug transactions in the past.

14. Officer Pritchard turned his car around and saw the two individuals on foot flee the area, one going into a nearby house.

As a result, the first issue that we must address is the extent, if any, to which the challenged findings of fact are supported by competent evidence in the record.

The essential thrust of Finding of Fact No. 13 is that Officer Pritchard suspected that the interaction between Defendant and the two men that approached his vehicle on foot was a drug transaction

and that he had observed drug transactions on other occasions. At the suppression hearing, Officer Pritchard testified as follows:

Q: What, if anything, brought your attention to the defendant, Officer?

A: I observed the vehicle that had pulled down into the area of Amanda Place. I observed two other individuals approach the vehicle putting their hands into the vehicle, which is what I observed to be a suspected drug—

MR. JAMES: Objection . . . .

THE COURT: Overruled.

A: Which is what I observed to be a suspected drug transaction. *I've observed numerous transactions very similar to the way that it took place.*

As a result, Officer Pritchard's testimony provides sufficient evidentiary support for Finding of Fact No. 13.

Similarly, the essential thrust of Finding of Fact No. 14 is that Officer Pritchard observed the two individuals who had approached Defendant's vehicle flee the area. The dictionary defines to "flee" as "[t]o run away, as from trouble or danger." *American Heritage Dictionary of the English Language* 519 (3rd ed. 1997). According to Defendant, the fact that Officer Pritchard observed the two individuals quickly leaving the area, with one ducking into a nearby house, is not evidence of flight. Officer Pritchard testified at the suppression hearing that he "observed both of the two individuals who had been at the vehicle fleeing from the area." The appellate courts in this jurisdiction have allowed witnesses to testify that individuals were "fleeing" or "in flight" under the rubric of a "shorthand statement of fact," *see State v. Moore*, 301 N.C. 262, 271, 271 S.E.2d 242, 247-48 (1980), *overruled on other grounds, State v. Ramey*, 318 N.C. 457, 349 S.E.2d 566 (1986) (stating that "this Court has long held that a witness may state 'the instantaneous conclusions of the mind as to the appearance, condition, or physical or mental state of persons, animals, or things, derived from the observation of a variety of facts presented to the senses at one and the same time' ") (quoting *State v. Spaulding*, 298 N.C. 397, 411, 219 S.E.2d 178, 187 (1975)), so this portion of Officer Pritchard's testimony was clearly competent and supported the challenged factual finding. As a result, Officer Pritchard's testimony provides ample support for the trial court's conclusion that the

two individuals that approached Defendant's vehicle fled when Officer Pritchard turned his patrol vehicle around.

Thus, the only two findings of fact that Defendant has challenged on appeal have adequate evidentiary support. For that reason, all of the trial court's factual findings must be deemed true for the purpose of analyzing the appropriateness of the trial court's conclusions of law.

## Reasonable Suspicion

[2] Finally, Defendant challenges the trial court's conclusion of law that:

Under the totality of the circumstances, Officer Pritchard had reasonable suspicion based on articulable facts that to an officer of his experience and training would lead· him to believe that the Defendant was involved in a drug transaction and was therefore justified in making an investigatory stop of the Defendant's vehicle.

According to Defendant, the trial court's findings of fact did not support its conclusion that Officer Pritchard had a reasonable suspicion to believe that defendant was involved in a drug transaction. In other words, Defendant contends that, even accepting the trial court's findings of fact as valid, those factual findings demonstrate that Officer Pritchard did not have the necessary reasonable suspicion to justify stopping Defendant's vehicle on 26 August 2006.

"An investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' " *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979)). "*Terry v. Ohio* and its progeny have taught us that in order to conduct a warrantless, investigatory stop, an officer must have a reasonable and articulable suspicion of criminal activity." *State v. Hughes*, 353 N.C. 200, 206-07, 539 S.E.2d 625, 630 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968)).

A court must consider "the totality of the circumstances— the whole picture" [—] in determining whether a reasonable suspicion to make an investigatory stop exists. *U.S. v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981). The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a

reasonable, cautious officer, guided by his experience and train-
ing. *Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906; *State v.
Thompson*, 296 N.C. 700, 706, 252 S.E.2d 776, 779, *cert. denied*,
444 U.S. 907, 62 L. Ed. 2d 143 (1979). The only requirement is a
minimal level of objective justification, something more than an
"unparticularized suspicion or hunch." *U.S. v. Sokolow*, 490 U.S. 1,
7, 104 L. Ed. 2d 1, 10 (1989).

*Watkins*, 337 N.C. at 441-42, 446 S.E.2d at 70. As a result, the ultimate
issue before the trial court in a case involving the validity of an inves-
tigatory detention is the extent to which the investigating officer has
a reasonable articulable suspicion that the defendant might be
engaged in criminal activity.

The Supreme Court held that an investigatory detention was
appropriate on the basis of a remarkably similar set of facts in *State
v. Butler*, 331 N.C. 227, 415 S.E.2d 719 (1992). In *Butler*, the defend-
ant sought the suppression of evidence relating to his purchase of a
.12 gauge shotgun from a Fayetteville pawnshop and statements he
made to Officer Ernesto Hedges of the Tampa, Florida, Police De-
partment. The Supreme Court described the facts on which it based
its decision as follows:

Officer Hedges obtained the gun purchase receipt and the state-
ments on 11 October 1989 while on patrol as a uniformed officer
assigned to a speciality drug unit in Tampa. Hedges and his part-
ner saw defendant, an unfamiliar figure, standing with a group of
people on a Tampa street corner known as a "drug hole," an area
frequented by drug dealers and users. Hedges had had the area
under daily surveillance for several months. In the past six
months, Hedges had made four to six arrests at the corner and
knew that other arrests had occurred there. As Hedges and his
partner approached the group, defendant and the officers made
eye contact, at which point defendant immediately turned and
walked away.

Their suspicions raised, the officers followed defendant and
asked him for identification. Defendant handed Hedges a Florida
driver's license. Before Hedges accepted the identification, he
frisked defendant's person. Hedges testified that he conducted
the frisk in order to discover any weapons and for his own pro-
tection during the face-to-face encounter with a person he sus-
pected of drug activity.

*Id.*, 331 N.C. at 231-32, 415 S.E.2d at 721. After ascertaining that the defendant was wanted for murder in North Carolina, Officer Hedges placed him under arrest. The Supreme Court held that the investigatory detention at issue in *Butler* did not run afoul of the state and federal constitutional protections against unreasonable searches and seizures. According to the Supreme Court:

> In determining whether the *Terry* standard is met, we must consider Hedges' actions in light of the totality of the circumstances. *Rinck*, 303 N.C. at 559, 280 S.E.2d at 919; *Streeter*, 282 N.C. at 210, 195 S.E.2d at 506. Those circumstances are: 1) defendant was seen in the midst of a group of people congregated together on a corner known as a "drug hole;" 2) Hedges had had the corner under daily surveillance for several months; 3) Hedges knew this corner to be a center of drug activity because he had made four to six drug-related arrests there in the past six months; 4) Hedges was aware of other arrests there as well; 5) defendant was a stranger to the officers; 6) upon making eye contact with the uniformed officers, defendant immediately moved away, behavior that is evidence of flight; and 7) it was Hedges' experience that people involved in drug traffic are often armed.
>
> While no one of these circumstances alone necessarily satisfies Fourth Amendment requirements, we hold that, when considered in their totality, Officer Hedges had sufficient suspicion to make a lawful stop. Hedges observed defendant not simply in a general high crime area, but on a specific corner known for drug activity and as the scene of recent, multiple drug-related arrests. *See United States v. Rickus*, 737 F.2d 360, 365 (3d Cir. 1984) (presence of defendants in area that recently experienced "a spate of burglaries"); *United States v. Magda*, 547 F.2d 756, 758-59 (2d Cir. 1976) (two suspects observed one hundred feet west of a park which was under twenty-four hour surveillance for drug activity), *cert. denied*, 434 U.S. 878, 54 L. Ed. 2d 157 (1977). The United States Supreme Court has held that mere presence in a neighborhood frequented by drug users is not, standing alone, a basis for concluding that the defendant was himself engaged in criminal activity. *Brown v. Texas*, 443 U.S. 47, 52, 61 L. Ed. 2d 357, 362-63 (1979). Here, however, there was an additional circumstance— defendant's immediately leaving the corner and walking away from the officers after making eye contact with them. *See United States v. Jones*, 619 F.2d 494, 494 (5th Cir. 1980) (individual's flight from uniformed law enforcement officer may be a fact used

to support reasonable suspicion "that criminal activity is afoot"); *Magda*, 547 F.2d at 758-59 (defendant's companion immediately moved away with a "rapid motion" after looking in direction of observing officer); *State v. Belton*, 441 So. 2d 1195, 1198 (La. 1983) (flight, nervousness, or a startled look at the sight of an officer may be a factor leading to reasonable suspicion), *cert. denied*, 466 U.S. 953, 80 L. Ed. 2d 543 (1984).

*Id.*, 331 N.C. at 233-34, 415 S.E.2d at 722-23; *See also State v. I.R.T.*, 184 N.C. App. 579, 585-86, 647 S.E.2d 129, 134-35 (2007) (holding that the officer had reasonable grounds to conduct an investigatory detention where a juvenile in a high drug area started walking away upon the approach of a law enforcement officer while keeping his head turned away from the officer and while moving his mouth as if he had something in it); *State v. Crenshaw*, 144 N.C. App. 574, 578-79, 551 S.E.2d 147, 149-50 (2001) (stating that the officer had reasonable grounds to frisk defendant "based upon the officers' familiarity with defendant, defendant's presence in a specific area known for drug activity, and defendant's having been illegally parked"); *State v. Willis*, 125 N.C. App. 537, 542, 481 S.E.2d 407, 411 (1997) (stating that "[t]he *Butler* Court held that, when an individual's presence at a suspected drug area is *coupled* with evasive action, police may form, from those actions, the quantum of reasonable suspicion necessary to conduct an investigatory stop"); *State v. Watson*, 119 N.C. App. 395, 397-99, 458 S.E.2d 519, 521-23 (1995) (holding that officer had reasonable grounds to suspect criminal activity when a defendant with a history of drug involvement, while in an area in which numerous drug arrests had been made, attempted to enter a convenience store and to swallow the drugs in his possession upon the approach of law enforcement officers). The remarkable similarity between the facts at issue here and the facts at issue in *Butler* requires us to begin our analysis of the legal issues that are raised by Defendant's challenge to the trial court's order denying his suppression motion by examining those similarities.

A careful review of the record indicates that all of the features that led the Supreme Court to uphold the investigative detention at issue in *Butler* are present in this case as well. At bottom, Defendant voluntarily entered a drug-ridden area, comparable to the one in which Officer Hedges found the defendant in *Butler*. While in the area, two individuals approached Defendant's car and inserted their hands into the interior of the vehicle. After Officer Pritchard became suspicious and approached Defendant and the two pedestrians, the

STATE v. MELLO

[200 N.C. App. 437 (2009)]

two pedestrians fled and Defendant began to drive off. In the same manner, the defendant in *Butler* attempted to walk away after making eye contact with Officer Hedges. Under the analysis adopted by the Supreme Court in *Butler*, this combination of presence in an area known to be a center of drug-related activity coupled with evasive action on the part of individuals involved in some sort of interaction with Defendant is sufficient to support a conclusion that Officer Pritchard had the "reasonable articulable suspicion" necessary to support an investigative detention. In fact, having seen the two pedestrians approach Defendant's vehicle and insert their hands into it, an action which the trial court found to have the appearance of a hand-to-hand drug transaction, Officer Pritchard actually had more of a basis for suspecting that criminal activity was afoot in this instance than Officer Hedges had for suspecting that something was amiss in *Butler*. *State v. Summey*, 150 N.C. App. 662, 667, 564 S.E.2d 624, 628 (2002) (holding that an officer's belief that he had observed the occupants of a truck participate in a drug transaction supported a valid investigatory detention of the truck and its occupants); *State v. Clyburn*, 120 N.C. App. 377, 380-81, 462 S.E.2d 538, 540-41 (1995) (holding that an officer's reasonable belief that he had witnessed a hand-to-hand drug transaction helped provide a "reasonable suspicion to make an investigatory stop of defendant's vehicle"). Thus, since the Supreme Court's decision in *Butler* is binding on this Court and since we are not persuaded that *Butler* can be distinguished from this case in any meaningful way, we do not believe that *Butler* leaves us with any alternative except to affirm the trial court's order denying Defendant's suppression motion.

The dissent, after noting our reliance on *Butler* and summarizing the facts of and decision in that case, attempts to distinguish this case from *Butler* on a number of different grounds. However, none of the bases upon which the dissent attempts to distinguish this case from *Butler* are persuasive.

First, the dissent appears to challenge the conclusion that the investigatory detention of Defendant took place in a drug-ridden area. In making this argument, the dissent contends that Officer Pritchard "based his opinion" that " 'the area of Chandler and Amanda Place' was 'a well-known drug location' " "on the fact that he had made and assisted in other drug arrests in the same area during his two and a half years with the Winston-Salem Police Department;" that "he did not know the specific number of arrests made;" and that Officer Pritchard was "assigned to an adjoining beat" rather than to the

Chandler and Amanda Place area "at the time.[1]" Put another way, the first argument advanced in the dissent tends to suggest that the area around Chandler and Amanda Place was not a drug-ridden area to the same extent as that in which the investigatory detention at issue in *Butler* occurred. However, the trial court determined, in a finding of fact that Defendant has not challenged on appeal and which is, for that reason, binding on us for purposes of appellate review, *State v. Fuller*, —— N.C. App. ——, ——, 674 S.E.2d 824, 829 (2009) (stating that "where, as here, the defendant does not challenge the findings of fact on appeal, they are binding, and the only question before this Court is whether those findings support the trial court's conclusions") (citing *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982); *State v. Cooper*, 186 N.C. App. 100, 103, 649 S.E.2d 664, 666 (2007), *disc. review denied*, 361 N.C. 698, 666 S.E.2d 761 (2008)), that Officer Pritchard "knew the area of Chandler and Amanda Place to be a well known drug location with a high drug activity." Thus, given the trial court's finding that Officer Pritchard "knew the area of Chandler and Amanda Place to be a well known drug location with a high drug activity," the first basis upon which the dissent attempts to distinguish *Butler* is not persuasive.

Secondly, the dissent points out that, "as to the alleged transaction, Officer Pritchard did not see any exchange." Although the dissent suggests that this factor, along with others, serves to "render *Butler* inapplicable to this appeal," we do not agree. The existence of evidence tending to suggest, as the trial court found, that a hand-to-hand drug transaction had occurred in Officer Pritchard's presence makes the case for an investigatory detention here stronger than the one before the Court in *Butler*, since there was no evidence that Officer Hedges had witnessed such an unlawful act prior to initiating

---

1. The dissent also emphasizes that, unlike the situation in *Butler*, "Officer Pritchard did not have the area in question under daily surveillance," "was not patrolling the exact location of Chandler and Amanda Place on a regular basis at the time of defendant's arrest, [and] defendant was not congregated with a group of suspected drug offenders under daily police scrutiny." As we read *Butler*, none of the facts upon which this component of the dissent's argument is based are in any way essential to the holding in *Butler*. Instead, as we previously noted, the essential holding in *Butler* is that, "when an individual's presence in a suspected drug area is *coupled* with evasive action, police may form, from those actions, the quantum of reasonable suspicion necessary to conduct an investigatory stop." *Willis*, 125 N.C. App. at 542, 481 S.E.2d at 411. Thus, whether the area in question was under daily surveillance, the extent to which the investigating officer had personally had the area in question under surveillance, and the number of individuals present in the area under surveillance are not critical to the result reached in *Butler*.

the investigatory detention at issue there.[2] Thus, the fact that Officer Pritchard did not actually witness an exchange between Defendant and the two individuals that approached his vehicle, while certainly making this case different from *Butler*, does not do so in such a manner as to suggest that the trial court erred by finding that the investigatory detention of Defendant resulted in a violation of his federal and state constitutional protections against unreasonable searches and seizures.

The dissent also notes that "defendant made no suspicious movements upon the police cruiser turning toward him." The fact that the trial court found that the two pedestrians, rather than Defendant, fled from the scene does not strike us as a valid basis upon which to distinguish this case from *Butler*.[3] We do not dispute the fact that merely leaving a drug-ridden area in a normal manner is not sufficient to justify an investigatory detention. *See In re J.L.B.M.*, 176 N.C. App. 613, 619-22, 627 S.E.2d 239, 243-45 (2006) (holding that information that a suspicious person wearing baggy clothes had been seen in a drug-ridden area and that he walked away upon the approach of law enforcement officers did not suffice to support an investigatory detention); *State v. Roberts*, 142 N.C. App. 424, 430, ftn. 2, 542 S.E.2d 703, 708, ftn. 2 (2001) (stating that "evidence that Defendant walked away from Miller after he asked Defendant to stop is not evidence that Defendant was attempting to flee from Miller and, thus, indicates nothing more than Defendant's refusal to cooperate"); *State v. Rhyne*, 124 N.C. App. 84, 89-91, 478 S.E.2d 789, 791-93 (1996) (holding that an officer lacked reasonable suspicion to frisk a defendant who was sit-

---

2. The dissent appears to contend in connection with this aspect of its argument that our reliance on *Summey*, 150 N.C. App. 662, 564 S.E.2d 624, and *Clyburn*, 120 N.C. App. 377, 462 S.E.2d 538, is misplaced on the grounds that those decisions are distinguishable from the present case on their facts. However, despite the existence of immaterial factual differences between this case on the one hand and *Summey* and *Clyburn* on the other, a careful analysis of the facts in *Summey* and *Clyburn* shows that the investigating officers did not actually see an exchange take place in either of these cases and that this Court still found that the events which led investigating officers to believe that drug transactions had occurred in their presence sufficed to justify investigatory detentions. The same logic suffices to support upholding the investigative detention at issue here given the trial court's unchallenged finding that "Officer Pritchard" "had observed numerous similar drug transactions in the past" and "suspected it was a drug transaction in which the Defendant had been involved."

3. Similarly, the fact that the events at issue in *Magda* did not coincide with the events at issue in *Butler* should not obscure the fact that the *Butler* Court cited *Magda* as a key point in its legal analysis, thus indicating that evasive action by third persons can serve the same purpose as flight by the defendant in terms of providing adequate justification for an investigatory detention.

ting in an area known to be a center of drug activity without taking evasive action or otherwise engaging in suspicious conduct); *State v. Fleming*, 106 N.C. App. 165, 170-71, 415 S.E.2d 782, 785 (1992) (holding that the fact that defendant was standing in an open area between two apartment buildings and walked away upon the approach of law enforcement officers did not justify an investigatory detention). However, the trial court's findings disclose the existence of an entirely different situation here than that addressed in these decisions. According to the trial court's findings, the two pedestrians who inserted their hands into Defendant's vehicle took evasive action of the type that supported a finding of reasonable suspicion in *Butler* upon observing Officer Pritchard's approach. The fact that the evasive action was taken by the two pedestrians, rather than Defendant, in the immediate aftermath of their encounter with Defendant created a reasonable basis, given the facts of this case, for believing that all three of these individuals were engaged in criminal activity that justified further investigative activity by Officer Pritchard. After all, the issue is not whether Defendant, and Defendant alone, did something that created a reasonable suspicion on the part of Officer Pritchard; instead, the issue is whether, viewed in their totality, the surrounding circumstances created a reasonable suspicion on the part of Officer Pritchard that Defendant might be involved in criminal activity. *Watkins*, 337 N.C. at 441, 446 S.E.2d 70. Although the necessary reasonable suspicion can be created by the suspect's own conduct, there are reported cases, including the *Magda* decision cited by the Supreme Court in *Butler*, 331 N.C. at 234, 415 S.E.2d at 723, in which reviewing courts have considered the conduct of third parties to be relevant to the "reasonable articulable suspicion" inquiry as well. *See United States v. Soto-Cervantes*, 138 F.3d 1319, 1322-23 (10th Cir. 1998) (holding that the fact that a member of a group of men other than the defendant jumped over a wall and hid something upon the arrival of law enforcement officers was relevant to the "reasonable suspicion" inquiry); *Magda*, 547 F.2d at 758-59 (stating that the fact that defendant's companion rapidly moved away after looking in an observing officer's direction was relevant to a "reasonable suspicion" determination); *Commonwealth v. Moses*, 408 Mass. 136, 142, 557 N.E.2d 14, 15-18 (1990) (holding that the fact that a group of men surrounding a car parked in a marked bus stop dispersed upon the approach of investigating officers was relevant to a "reasonable suspicion" determination). The fact that the two pedestrians fled in the immediate aftermath of an interaction with Defendant that could be reasonably construed as a hand-to-hand drug transaction which

STATE v. MELLO

[200 N.C. App. 437 (2009)]

took place in "a well known drug location with high drug activity" would clearly have raised a reasonable suspicion in the mind of a competent and experienced law enforcement officer that further investigation was warranted; the fact that Defendant did not drive away at a high rate of speed or take some other obvious evasive action himself does not change that fact. The federal and state constitutions do not, under existing decisional authority, require more in order for a valid investigatory detention to take place.

As a result, the facts of this case as set out in the trial court's findings of fact cannot be distinguished on any material basis from those that the Supreme Court found to be sufficient to justify an investigatory stop in *Butler*. For that reason, we are compelled by existing Supreme Court precedent to conclude that the trial court's findings of fact amply supported its conclusion that Officer Pritchard had an adequate basis for conducting an investigatory detention of Defendant on 26 August 2006.

### Conclusion

For the reasons set forth above, we find no error in the trial court's order denying Defendant's motion to suppress. Thus, we further conclude that Defendant's guilty pleas and the resulting judgment entered by Judge Long should remain undisturbed.

NO ERROR.

Judges JACKSON concurs.

Judge HUNTER, Jr. dissents by separate opinion.

HUNTER, JR., Robert N., Judge, dissenting.

The facts of this case present either the pinnacle of a "hunch" or the absolute minimum threshold for "reasonable suspicion." The former will not support the initial traffic stop of defendant's vehicle in this case, while the latter will shower the investigatory stop in issue with all the riches and blessings accompanying a determination that a suspicion was "reasonable" under the United States and North Carolina Constitutions. In my opinion, Officer Pritchard's testimony shows that he had a "hunch" or "a strong intuitive feeling or a premonition," *The American Heritage College Dictionary* 663 (3d ed. 1997), as opposed to a "particularized and objective" suspicion that a drug transaction had taken place. *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981). Accordingly, I dissent.

Citizens in this country are protected against "unreasonable searches and seizures" by the Fourth Amendment of the United States Constitution. U.S. Const. amend. IV; *Mapp v. Ohio*, 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 1090, *reh'g denied*, 368 U.S. 871, 7 L. Ed. 2d 72 (1961) (Fourth Amendment applicable to states through Fourteenth Amendment). Investigatory stops as authorized by *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968) are constitutional under the Fourth Amendment as long as the officer initiating the stop has a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez*, 449 U.S. at 417-18, 66 L. Ed. 2d at 629. This standard under *Terry*, also known as "reasonable suspicion," "is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 309 (1990).

When reviewing the facts and information presented to an officer leading to a *Terry* stop, we must examine the "totality of the circumstances." *United States v. Sokolow*, 490 U.S. 1, 8, 104 L. Ed. 2d 1, 10 (1989). This requires us to examine two elements: (1) whether a trained officer's assessment to make a stop was "based upon all the circumstances" including "objective observations" of "the modes or patterns of operation of certain kinds of lawbreakers"; and (2) whether the officer's assessment in light of his training "[raised] a suspicion that the particular individual being stopped is engaged in wrongdoing." *Cortez*, 449 U.S. at 418, 66 L. Ed. 2d at 629. Under these guiding principles, we must determine whether "[t]he stop [is] based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citations omitted). "The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.'" *Id.* at 442, 446 S.E.2d at 70 (quoting *Sokolow*, 490 U.S. at 7, 104 L. Ed. 2d at 10).

Under the "totality of the circumstances" test, we consider several factors on the part of the accused including a suspect's nervousness or activity at an unusual hour. *See State v. McClendon*, 350 N.C. 630, 639, 517 S.E.2d 128, 133 (1999) (concluding that the circumstances gave rise to a reasonable suspicion because the defendant was fidgeting, sweating, breathing rapidly, and avoiding eye contact); *Watkins*, 337 N.C. at 443, 446 S.E.2d at 70-71 (holding that the police officer had reasonable suspicion when he saw a vehicle moving with

its lights off in the parking lot of a closed business in a rural area at 3:00 a.m.). We also take into account a defendant's presence in a high-crime area or whether the defendant engages in unprovoked flight. *Illinois v. Wardlow*, 528 U.S. 119, 124, 145 L. Ed. 2d 570, 576 (2000). "Headlong flight—wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* Considered individually, none of these factors are alone sufficient, and must be considered within the context of all the facts presented. *Cortez*, 449 U.S. at 417, 66 L. Ed. 2d at 629; *Wardlow*, 528 U.S. at 124, 145 L. Ed. 2d at 576.

The majority states that they are constrained, at least in part, to affirm the trial court's decision in this case based on our Supreme Court's holding in *State v. Butler*, 331 N.C. 227, 415 S.E.2d 719 (1992). In *Butler*, defendant was with a group of people congregated on a corner known for its high drug activity. *Butler*, 331 N.C. at 231-32, 415 S.E.2d at 721. The officer had conducted daily surveillance of the corner for several months, and during that time had made four to six drug-related arrests. *Id.* When the police officers approached the defendant, "upon making eye contact with the uniformed officers, [the] defendant immediately moved away," which the Court concluded to be "behavior that is evidence of flight[.]" *Id.* at 233, 415 S.E.2d at 722. In summarizing the facts observed by the officer prior to stopping the defendant, the Court listed:

> 1) [D]efendant was seen in the midst of a group of people congregated on a corner known as a "drug hole"; 2) Hedges had had the corner under daily surveillance for several months; 3) Hedges knew this corner to be a center of drug activity because he had made four to six drug-related arrests there in the past six months; 4) Hedges was aware of other arrests there as well; 5) defendant was a stranger to the officers; 6) upon making eye contact with the uniformed officers, defendant immediately moved away, behavior that is evidence of flight; and 7) it was Hedges' experience that people involved in drug traffic are often armed.

*Id.* at 233, 415 S.E.2d at 722. In concluding reasonable suspicion existed for the police officer to conduct an investigatory stop of defendant, the *Butler* Court explained that:

> The United States Supreme Court has held that mere presence in a neighborhood frequented by drug users is not, standing alone, a basis for concluding that the defendant was himself engaged in criminal activity. *Brown v. Texas*, 443 U.S. 47, 52, 61 L. Ed. 2d 357,

362-63 (1979). Here, however, there was an additional circum-stance—defendant's immediately leaving the corner and walking away from the officers after making eye contact with them.

*Id.* at 234, 415 S.E.2d at 722-23.

In addition to *Butler*, the majority cites a plethora of case law in which "reasonable suspicion" was found based on some or all of the specific behaviors or circumstances listed above which can support an officer's determination to conduct an investigatory stop under *Terry*. However, the fact remains that "reasonable suspicion" must be based on *objective* facts. *Watkins*, 337 N.C. at 442, 446 S.E.2d at 70; *Sokolow*, 490 U.S. at 7, 104 L. Ed. 2d at 10; *Cortez*, 449 U.S. at 417, 66 L. Ed. 2d at 628. In order for something to be "objective," it must have "actual existence or reality" and be "[u]ninfluenced by emotion, sur-mise, or personal prejudice." *The American Heritage Dictionary* 857 (2d ed. 1985). While an officer may interpret objective facts through his experience and training, it remains paramount nevertheless that he have a "minimal level of objective justification" in deciding to ini-tiate a *Terry* stop. *Watkins*, 337 N.C. at 442, 446 S.E.2d at 70.

In the transcript, the sum total of objective facts presented to the trial court to support this particular *Terry* stop were: (1) "the area of Chandler and Amanda Place" was considered by Officer Pritchard to be "a well-known drug location with high drug activity that takes place there on a regular basis"; (2) Officer Pritchard watched two familiar but unknown individuals walk to defendant's vehicle, and put "their hands into the vehicle"; and (3) the unknown individuals ran away when Officer Pritchard turned his cruiser around toward them, and one of the individuals "ducked" into a nearby house. Defendant committed no traffic offense.

With respect to the contention that "the area of Chandler and Amanda Place" was "a well-known drug location," the record shows that Officer Pritchard based this opinion on the fact that he had made and assisted in other drug arrests in the same area during his two and half years with the Winston-Salem Police Department.[4] According to the transcript, he had made "numerous" arrests in the Chandler and Amanda Place area, though he did not know the specific number of arrests made. When asked if he regularly patrolled the area in which defendant was arrested, he stated that he was assigned to an adjoin-

---

4. The trial court's order shows that Officer Pritchard had three and a half years of experience, but a reading of the transcript shows that the arrest of defendant hap-pened about a year prior to the hearing.

ing beat at the time. The State offered no other evidence showing that this area was "a well-known drug location." Moreover, as to the alleged transaction, Officer Pritchard did not see any exchange. In fact, the trial court found that "Officer Pritchard did not see *any* object or money in their hands, nor did he observe any direct exchange between the individuals and the Defendant or any other persons in the car." (Emphasis added.)

These observations of the record render *Butler* inapplicable to this appeal. Officer Pritchard did not have the area in question under daily surveillance, he was not patrolling the exact location of Chandler and Amanda Place on a regular basis at the time of defendant's arrest, defendant was not congregated with a group of suspected drug offenders under daily police scrutiny, and defendant made no suspicious movements upon the police cruiser turning toward him. Unlike *Butler*, which contained a laundry list of suspect activity, if we look only at defendant's actions leading up to Officer Pritchard's intervention, we are left only with defendant being approached by two individuals who put their hands into his car in a "well-known drug location."

In *Butler*, our Supreme Court cites *United States v. Magda*, 547 F.2d 756 (2d Cir. 1976), *cert. denied*, 434 U.S. 878, 54 L. Ed. 2d 157 (1977). *Butler*, 331 N.C. at 234, 415 S.E.2d at 723. In *Magda*, a police officer observed two men "exchange something" on a street known for narcotics sales; the area in question was "particularly notorious as a center for drug traffic" and "under 24-hour surveillance" by police. *Magda*, 547 F.2d at 757-58. The officer actually saw "that each man gave and received something simultaneously." *Id.* at 757. After witnessing this exchange, the defendant, Magda, walked across the street, while Magda's "companion looked in [the officer's] direction, turned in a rapid motion and immediately walked away." *Id.* at 757-58.

*Magda's* holding that someone's actions other than the defendant's could be a factor within the context of a *Terry* analysis was not applicable to the actual holding of *Butler*. As the *Butler* Court explained, the defendant was the person who "[left] the corner and walk[ed] away from the officers after making eye contact with them." *Butler*, 331 N.C. at 234, 415 S.E.2d at 722-23. However, even assuming that this part of *Magda* applies to the current appeal through *Butler*, *Magda* hardly stands for the proposition that the flight of third persons other than the defendant is singularly sufficient for "reasonable

suspicion." Like *Butler*, the area of the arrest in *Magda* was subject to constant police scrutiny, and the officer in *Magda* actually observed an exchange between the individuals suspected of criminal activity. *Magda*, 547 F.2d at 757-58.

With respect to Officer Pritchard's testimony that he observed unknown individuals inserting their hands into defendant's vehicle, the majority cites *State v. Summey*, 150 N.C. App. 662, 664 S.E.2d 624 (2002) and *State v. Clyburn*, 120 N.C. App. 377, 462 S.E.2d 538 (1995), and argues that Officer Pritchard had reasonable suspicion based merely on "the appearance of a hand-to-hand drug transaction." However, in *Summey*, the arresting officer was conducting a "drug surveillance operation" on the area in question, and the officer "positioned himself in view of a residence which had been the subject of a nuisance abatement proceeding for drug-related activities." *Summey*, 150 N.C. App. at 663-64, 564 S.E.2d at 626. "A group of men were standing in the front yard of the residence" at the time the officer was conducting surveillance. *Id.* Within these facts not present in the current appeal, the *Summey* Court found "reasonable suspicion" for a *Terry* stop of the defendant's vehicle where the officer merely observed

> a white Nissan pickup truck with the rear window missing drive toward[] the residence and stop alongside the road. One of the men standing in the yard approached the truck and appeared to engage in a brief conversation with the driver. A few moments later, the man returned to the yard and the truck drove away.

*Id.*

*Clyburn* is even more distinguishable from the case *sub judice*. In that case, the record showed:

> On the evening of 9 November 1993, Officers R.A. McManus and C.R. Selvey of the Charlotte-Mecklenburg Police Department conducted surveillance in the 1600 block of Remount Road. Both officers were aware of the area's reputation for drug activity and had previously made drug arrests in the vicinity. While positioned in an unmarked car, the officers observed three black males standing in front of a vacant duplex across the street. Officer McManus testified that he observed several "meetings" whereby the three men were approached by individuals on foot who would speak briefly to one of the black males. During each "meeting," the indi-

vidual would disappear behind the duplex with the same black male, later identified as the defendant. The other two males remained in front of the duplex as if acting as lookouts. Each time the defendant reappeared, the other two men conferred with him. Officers McManus and Selvey had observed similar "meetings" during their years on the police force. Based on their training and experience, both officers testified that in their opinions the "meetings" were drug transactions.

*Clyburn*, 120 N.C. App. at 378, 462 S.E.2d at 539. After the surveilling officers witnessed this activity, they conducted a *Terry* stop of the defendant's car after witnessing a passenger in the car engage in similar activity. *Id.*

Absent Officer Pritchard's observing an actual exchange inside defendant's car in this case, I believe the above case law amply demonstrates that the circumstantial evidence necessary for "reasonable suspicion" is substantially higher than (1) presence in a "drug location" and (2) the flight of third persons from an approaching police cruiser. Were the fleeing individuals the defendants in this appeal, their actions would certainly bear the indicia of guilt prescribed by our United States Supreme Court. *Wardlow*, 528 U.S. at 124, 145 L. Ed. 2d at 576. However, because they are not, my contention is that their actions gave Officer Pritchard "a strong intuitive feeling or a premonition" in light of his *prior*, and not then existing, experience at Chandler and Amanda Place with respect to defendant. While I recognize that such strong intuitions are a valuable tool in an officer's execution of his duties, they nonetheless amount to a mere "hunch," and are insufficient under the guarantees of the Fourth Amendment. *Sokolow*, 490 U.S. at 7, 104 L. Ed. 2d at 10. More importantly, however, they are insufficient to support the trial court's conclusion of law that Officer Pritchard had reasonable suspicion to believe that defendant was involved in a drug transaction.

As such, because the trial court's conclusion of law as to reasonable suspicion is based on insufficient objective facts, and given that no case law otherwise binds this Court to a contrary result, I would reverse defendant's conviction.