An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-273

Filed: 20 October 2015

Cabarrus County, Nos. 12 CRS 54564; 14 CRS 600

STATE OF NORTH CAROLINA,

      v.

MARICO ANTWAIN MCCLURE

      Appeal by defendant from order entered 4 November 2014 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Heard in the Court of Appeals 9 September 2015.

> *Attorney General Roy Cooper, by Assistant Attorney General Joseph L. Hyde, for the State.*
>
> *Economos Law Firm, PLLC, by Larry C. Economos, for defendant-appellant.*

      CALABRIA, Judge.

      Marico Antwain McClure ("defendant") appeals from an order denying his motion to suppress evidence arising from an investigatory stop because the officers lacked a reasonable, articulable suspicion. We affirm.

### *I. Background*

On 26 August 2012, Officer Paul Kluttz ("Officer Kluttz") of the Concord Police Department ("CPD") was on patrol when he responded to a call to investigate a missing person at a convenience store known as Danny's. At approximately 9:00 p.m., Officer Kluttz arrived at Danny's, located near the intersection of North Church Street and Buffalo Street in Concord, a high-crime area with frequent illegal drug activity and prostitution. There he spotted the suspected missing person, a white female, in Danny's well-lit parking lot, leaning against the building and facing the front of a parked SUV. Officer Kluttz parked his patrol car in a parking space two places to the right of the SUV. The female never looked at him. Officer Kluttz then observed the female speaking to the SUV driver and read her lips as she asked, "Do you have crack?" He also observed the female reach into her brassiere. When the female looked toward Officer Kluttz, she seemed shocked to see him. Then she looked directly back toward the SUV, which immediately backed out of its parking space and quickly left the parking lot.

At the same time, Officer Dustin Wilhoit ("Officer Wilhoit") of the CPD drove into Danny's parking lot and observed the SUV leaving quickly. Officer Kluttz radioed Officer Wilhoit that he suspected a potential drug transaction and ordered Officer Wilhoit to stop the SUV to investigate. Officer Wilhoit observed the SUV driving at a high rate of speed as it exited the parking lot, turning left onto Church

Street, and right onto Buffalo Street. Officer Wilhoit activated his blue lights and stopped the SUV on Buffalo Street.

Meanwhile, Officer Kluttz approached the female at Danny's. She admitted asking the driver of the SUV if he had any marijuana and that she reached into her brassiere because she kept her money there, but she denied asking defendant for crack cocaine. Officer Kluttz then drove to where Officer Wilhoit stopped the SUV on Buffalo Street.

Officer Wilhoit approached the driver's side of the SUV and asked defendant for his driver's license. Defendant appeared angry with the officers. Defendant lifted the lid to the center console of the vehicle and then quickly slammed it shut, stating his driver's license was at home. Officer Wilhoit grew suspicious of the contents in the center console and asked defendant to step outside the SUV. After unsuccessfully asking defendant at least five more times to produce his driver's license, the officers placed defendant under arrest for failure to furnish his driver's license and placed him into a patrol car.

Since the SUV was stopped on a busy street, Officer Wilhoit requested a tow truck to remove it from the roadway. Officer Kluttz then performed a search of the area immediately around the driver's seat of the SUV. The center console contained two handguns wrapped in a plastic bag and defendant's driver's license inside a wallet.

Defendant was indicted for possession of a firearm by a felon, carrying a concealed gun, and providing fictitious information to an officer. On 14 January 2013, defendant filed a motion to suppress the evidence seized from his vehicle. After a suppression hearing, the trial court entered a written order on 4 November 2014 denying defendant's motion. That same day, defendant pled guilty to all three counts listed on the indictment and reserved his right to appeal the trial court's order denying his motion to suppress. The trial court sentenced defendant to a minimum of 9 months and a maximum of 20 months to be served in the North Carolina Division of Adult Correction. Defendant appeals.

## II. Standard of Review

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

## III. Motion to Suppress

Defendant contends the trial court erred by denying his motion to suppress evidence arising from the investigatory stop because the officers lacked a reasonable, articulable suspicion. We disagree.

"Both the United States and North Carolina Constitutions protect against unreasonable searches and seizures." *State v. Otto*, 366 N.C. 134, 136, 726 S.E.2d 824, 827 (2012) (citations omitted). An investigatory traffic stop of an automobile is considered a "'seizure[.]'" *Id.* at 136-37, 726 S.E.2d at 827. "[R]easonable suspicion is the necessary standard for traffic stops[.]" *State v. Styles,* 362 N.C. 412, 414, 665 S.E.2d 438, 440 (2008) (quotation marks and citation omitted). Therefore, the investigatory stop of an automobile "must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.'" *State v. Watkins,* 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L.Ed.2d 357, 362 (1979)).

In determining whether an officer has the requisite reasonable suspicion to justify an investigatory stop, this Court "must consider 'the totality of the circumstances—the whole picture[.]'" *Id.* at 441, 446 S.E.2d at 70 (citation omitted). An investigatory stop "must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *Id.* "Reasonable suspicion is a less demanding standard than probable cause and requires a showing

considerably less than preponderance of the evidence." *Styles,* 362 N.C. at 414, 665 S.E.2d at 439 (quotation marks and citation omitted). "The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.'" *State v. Mello*, 200 N.C. App. 437, 444, 684 S.E.2d 483, 488 (2009) (quoting *United States v. Sokolow,* 490 U.S. 1, 7, 104 L.Ed.2d 1, 10 (1989)). "[A]n individual's presence in a suspected drug area coupled with evasive action may provide an adequate basis for the reasonable suspicion necessary for an investigatory stop." *State v. McKnight*, __ N.C. App. __, __, 767 S.E.2d 689, 694, *disc. review denied*, 772 S.E.2d 727 (2015) (citations omitted).

In the instant case, according to the unchallenged findings of fact: (1) defendant and the female were in a place well-known for illegal drug activity; (2) the female asked defendant if he had any crack cocaine; (3) the female reached into her brassiere and (4) looked shocked when she locked eyes with Officer Wilhoit and realized he was observing her; and (5) immediately after the female turned and looked back toward defendant, he quickly exited Danny's parking lot. Officer Kluttz testified that Danny's parking lot was well-lit and that he was only twelve to fifteen feet away from the female. With an unobstructed view of her, Officer Kluttz observed her speak to defendant, ask him for drugs, and reach into her brassiere. Officer Wilhoit testified that based on his training and experience, "females that use . . . street drugs will carry money, drugs, drug paraphernalia stuffed inside their bra."

These circumstances, in addition to Officer Kluttz's observation that defendant's vehicle quickly exited Danny's parking lot immediately after the female discovered his presence, as well as Officer Wilhoit's observation of defendant's vehicle leaving the parking lot quickly, sufficiently supported the requisite reasonable suspicion required to conduct an investigatory stop of defendant's vehicle for potential drug activity.

By considering the totality of the circumstances, we conclude the officers had the requisite reasonable suspicion to make a lawful, investigatory stop. Therefore, we need not address defendant's other issue on appeal as to whether competent evidence existed to support the trial court's finding that defendant's vehicle exceeded the speed limit after leaving Danny's parking lot. This is because notwithstanding the trial court's finding that defendant was speeding, reasonable suspicion existed to justify the investigatory stop. Accordingly, the trial court did not err in denying defendant's motion to suppress and any evidence resulting from the stop need not be suppressed on this basis.

## *IV. Conclusion*

The officers had numerous objective facts to support their reasonable suspicion to stop defendant's vehicle. Defendant was in a high-crime area with frequent illegal drug activity, and Officer Kluttz observed what, based on his training and experience, amounted to a potential drug transaction that warranted further investigation. He

observed the female ask defendant for drugs, reach into her brassiere, and appear shocked once she realized a uniformed officer was observing her.  These factors, in conjunction with what Officer Kluttz reasonably could have inferred to be evasive action taken by defendant quickly exiting Danny's parking lot immediately after his presence was detected, were sufficient to justify an investigatory stop of defendant's vehicle for potential illegal drug activity.  Therefore, the trial court properly denied defendant's motion to suppress, and its order is affirmed.

AFFIRMED.

Judges STROUD and INMAN concur.

Report per Rule 30(e).