TYSON, Judge, dissenting.
*279 These experienced officers had reasonable, articulable, and objective suspicion to initiate a lawful investigatory stop of Defendant's vehicle, based upon the totality of the circumstances. The trial judge's underlying findings of fact are supported by competent evidence, and are conclusively binding on appeal. These findings support the trial judge's ultimate conclusions of law to deny Defendant's motion to suppress.
The majority's conclusion to reverse the trial court's order is unduly focused upon their characterization of Defendant's flight, while disregarding the "totality of the circumstances." Their conclusion ignores or minimizes all the surrounding factors, and is contrary to controlling decisions of the Supreme Court of the United States, the Supreme Court of North Carolina, and this Court. See United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981). I respectfully dissent.
I. Standard of Review
[T]he scope of appellate review of [a denial of a motion to suppress] is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.
State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted).
A trial court's findings of fact are binding on appeal "if there is evidence to support them, even though the evidence might sustain findings to the contrary. " Adams v. Tessener, 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001) (emphasis supplied) (citations and quotation marks omitted).
II. Analysis
"An investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' " State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting *280 Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357, 362 (1979) ). A court must consider "the totality of the circumstances- *476 the whole picture" to determine whether reasonable suspicion to make an investigatory stop exists. Cortez, 449 U.S. at 417, 101 S.Ct. at 695, 66 L.Ed.2d at 629.
An investigatory stop is reviewed for "specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." State v. Mello, 200 N.C.App. 437, 443-44, 684 S.E.2d 483, 488 (2009) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968) ). "The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.' " Mello, 200 N.C.App. at 444, 684 S.E.2d at 488 (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989) ).
The Supreme Court of the United States has held an individual's mere presence in a neighborhood frequented by drug users is an insufficient basis, standing alone, for concluding a defendant himself is engaged in criminal activity. Brown, 443 U.S. at 52, 99 S.Ct. at 2641, 61 L.Ed.2d at 362-63. However, an individual's flight from uniformed law enforcement officers is an additional factual circumstance, within "the totality of the circumstances" which may be used to support a reasonable suspicion of criminal activity. See State v. Butler, 331 N.C. 227, 234, 415 S.E.2d 719, 722-23 (1992) (holding defendant's presence on specific corner known for drug activity, coupled with fact that "defendant immediately moved away" upon making eye contact with officers, was sufficient suspicion for officers to make a lawful stop).
At Defendant's suppression hearing, Officer Cole testified he observed a vehicle enter the Spring Manor apartment complex. Officer Cole stated: "The car proceeded through the parking lot slowly, never stopping, though, at any particular building. Once I noticed the individual standing outside of [building] 408, it appeared that he was waiting on that vehicle." No other individuals were outside of building 408, the immediate area or in the parking lot at that time after midnight.
Officer Cole continued to testify: "As that car came around the corner, that's when [the individual standing outside] noticed us and looked at the vehicle. When the vehicle made the turn he yelled something to them, which caused them to speed up and leave the complex, and he backed up and went back into the apartment."
Officer Cole testified he believed "that car was coming to visit that individual standing outside 408" and intended "to either purchase or sell illegal drugs." The individual outside of building 408 "warned [Defendant]
*281 that [the officers] were across the street, and they drove out and left and [the individual standing outside] went back into his apartment." These articulated and reasonable suspicions are an unbroken chain of events and were based on Officer Cole's training and experience. Officer Cole testified to "seven-plus years as an experienced Greensboro police officer" and had prior knowledge of illegal narcotics being sold out of apartment building 408.
Officer Branson also testified he was aware of illegal activities taking place in the Spring Manor apartment complex, prior to the date in question. Officer Branson testified the apartment complex manager reported other residents had specifically mentioned individuals in building 408 were involved in the use and sale of illegal narcotics.
Officer Branson testified he observed "the individual [outside of building 408] yelling and then looking back at [Defendant's] vehicle, and at that point [Defendant] increased his speed and exited the parking lot much more rapidly than he was traveling initially." After the yell, he saw the unbroken sequence of the vehicle "chang[e] from driving slowly through the complex to speeding up as our police vehicle was observed." The person who had yelled, "backed up and went back into the apartment [408]." Officer Branson testified this behavior "raised [his] suspicion to fleeing upon police presence." From the time of the event until the stop, the officers never lost sight of the vehicle with Defendant inside.
Based on these officers' testimonies, the trial court made the following pertinent findings of fact:
*477 5) ... Officers Branson and Cole were in a highly visible, marked, Greensboro Police Department patrol vehicle and located in the Spring Valley Shopping Center parking lot area, directly across the street from the Spring Manor apartment complex.
6) Prior to 14 July 2014, Officer Cole had made numerous illegal drug arrests in the Spring Manor apartment complex and in the immediate area of the Spring Manor apartment complex.
7) As of 14 July 2014, Officer Cole knew that the Spring Manor apartment complex and its immediate surrounding area was an "open air drug market."
8) Prior to 14 July 2014, the manager of the Spring Manor apartment complex informed Officer Branson that the Spring Manor apartments were getting worse, and *282 specifically identified apartment [building] 408 as a place for using illegal drugs and for the sale and distribution of illegal drugs.
9) Prior to 14 July 2014, Officer Branson was aware of numerous crimes that had been committed in the Spring Manor apartment complex.
10) As of 14 July 2014, Officers Branson and Cole knew that the Spring Manor apartment complex was in a high drug and crime-ridden area.
....
12) On Monday morning at approximately 12:15 a.m. on 14 July 2014, Officers Branson and Cole observed a white, Hyundai Elantra ("Elantra"), enter the Spring Manor apartment complex parking lot, circling the parking lot at a very slow rate of speed.
13) Officers Branson and Cole observed that the Elantra never pulled into any parking space or stopped anywhere but instead drove at a very slow rate of speed toward the area of Spring Manor apartment [building] 408.
14) Almost simultaneously to observing the Elantra as set forth above, Officers Branson and Cole observed a male directly in front of Spring Manor apartment [building] 408.
15) Thereafter, Officers Branson and Cole observed said male directly in front of Spring Manor apartment [building] 408 look directly at their highly visible, marked, Greensboro Police Department patrol vehicle that was in plain view and only a short distance away from said male.
16) Officers Branson and Cole next observed said male, after identifying their Greensboro Police Department patrol vehicle as set forth above, look directly at the Elantra, which was by then only a short distance away from said male, and make a loud warning noise, which was heard by Officer Cole.
17) Immediately after making said warning noise as set forth above, Officers Branson and Cole observed the Elantra accelerate and quickly exit the Spring Manor apartment complex and flee the area unprovoked, and flee from Officers Branson and Cole unprovoked.
*283 Based on these findings of fact, the trial court concluded:
1) Based on the totality of the circumstances, the State has proven by a preponderance of the credible and believable evidence that the investigatory stop of the Elantra driven by Defendant in this case was based on specific and articulable facts, as well as the rational inferences from those facts as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.
2) Based on the totality of the circumstances, ... the investigatory stop of the Elantra driven by Defendant was legal and valid, and that Officers Branson and Cole had a reasonable and articulable suspicion for making the investigatory stop of said Elantra.
3) Based on the totality of the circumstances, ... Officers Branson and Cole had a reasonable suspicion supported by articulable facts that criminal activity may be afoot.
Considering these undisputed facts and the officers' testimonies at Defendant's suppression hearing, the trial court's findings of fact, particularly that the officers "observed [Defendant] accelerate and quickly exit the Spring Manor apartment complex and flee *478 the area," are amply supported by competent record evidence. These findings of fact in turn support the trial court's conclusion of law that the officers had "a reasonable suspicion ... that criminal activity may be afoot" to justify their investigative stop of Defendant's vehicle. Mello, 200 N.C.App. at 439, 684 S.E.2d at 486.
The majority's protestations to the contrary, their reversal of the trial court's ruling apparently turns on a notion of, and fictional distinction between, "suspected" versus "actual" flight and not from the "totality of the circumstances." No precedents lend support to this contrived distinction. See State v. Jackson, 368 N.C. 75, 80, 772 S.E.2d 847, 850 (2015) (holding reasonable suspicion justified investigatory stop where defendant stood "in a specific location known for hand-to-hand drug transactions" and defendant and another "split up and walked in opposite directions upon seeing a marked police vehicle approach)"; Butler, 331 N.C. at 234, 415 S.E.2d at 722-23 (holding defendant's presence in neighborhood frequented by drug users, coupled with him immediately leaving the corner and walking away after making eye contact with officers, constituted reasonable suspicion to conduct investigatory stop); In re I.R.T., 184 N.C.App. 579, 585-86, 647 S.E.2d 129, 134-35 (2007) (holding officer had reasonable grounds to conduct investigatory stop where juvenile in known high drug area began walking away as officer approached him, while keeping his head turned away from officer); State v. Willis, 125 N.C.App. 537, 542, 481 S.E.2d 407, 411 (1997)
*284 (holding officers had reasonable suspicion to conduct investigatory stop of defendant where he was seen leaving a suspected drug house and officers observed him "exhibit[ing] nervous behavior" when he knew he was being followed). Whether Defendant's speed exceeded the posted speed limit or violated some other motor vehicle law is not determinative of Defendant's flight from the known drug area.
Considering the past history of drug activity and arrests at the Spring Manor Apartments, the time, place, manner, the unbroken sequence of observed events, Defendant's actions upon being warned and the "totality of the circumstances," the officers' testimonies and the trial court's findings of fact "go beyond an inchoate suspicion or hunch and provide a particularized and objective basis for suspecting defendant of involvement in criminal activity." Jackson, 368 N.C. at 80, 772 S.E.2d at 850-51 (citation and internal quotation marks omitted). The trial court correctly found and concluded the officers had a reasonable and articulable suspicion, based upon the totality of the circumstances, to conduct a lawful investigatory stop of Defendant's vehicle. The trial court did not err by denying Defendant's motion to suppress evidence recovered as a result of the lawful investigatory stop.
III. Conclusion
The trial court's findings of fact are supported by competent testimonial and record evidence. These findings of fact are "conclusively binding on appeal[.]" Cooke, 306 N.C. at 134, 291 S.E.2d at 619. These findings of fact in turn support the trial court's ultimate conclusions citing the "totality of the circumstances" that the officers had reasonable suspicion to conduct a lawful investigatory stop of Defendant's vehicle. The trial court's findings of fact are binding upon this Court on appeal where "there is evidence to support them, even though the evidence might sustain findings to the contrary." Adams, 354 N.C. at 63, 550 S.E.2d at 503.
I vote to affirm the trial court's denial of Defendant's motion to suppress and find no error in Defendant's convictions or the judgment entered thereon. I respectfully dissent.