STATE OF NORTH CAROLINA v. CHRIS CLYBURN

No. COA94-1182

(Filed 3 October 1995)

**1. Searches and Seizures § 77 (NCI4th)— observation of suspected drug transaction—investigatory stop permissible**

The investigatory stop of defendant's vehicle was permissible where police officers, who were conducting surveillance in a drug trafficking area, observed what they believed to be a drug transaction and radioed for backup; another police vehicle came up behind defendant's vehicle which was stopped; and the officers requested defendant and his passenger to exit the vehicle.

**Am Jur 2d, Searches and Seizures § 75.**

**2. Searches and Seizures § 82 (NCI4th)— warrantless search of vehicle—protective frisk—admissibility of handgun**

The search of the glove compartment of defendant's car was justified as a protective frisk, and the seizure of a .357 Magnum handgun found in the glove compartment was lawful, where officers made an investigatory stop of defendant's car; after officers frisked defendant and a female passenger, defendant became belligerent; and the officers reasonably believed that defendant might be armed because of his suspected involvement in drug trafficking.

**Am Jur 2d, Searches and Seizures § 187.**

**Validity, under Federal Constitution, of warrantless search of motor vehicle—Supreme Cour cases. 89 L. Ed. 2d 939.**

**3. Searches and Seizures § 49 (NCI4th)— search of vehicle incident to arrest—admissibility of drugs found in ashtray**

Incident to an arrest for possession of a concealed weapon, officers were justified in searching the passenger area of defendant's vehicle, including receptacles such as an ashtray, and drugs found in the ashtray were admissible.

**Am Jur 2d, Searches and Seizures § 176.**

Appeal by defendant from judgments entered 23 March 1994 by Judge Robert D. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 29 August 1995.

On the evening of 9 November 1993, Officers R. A. McManus and C. R. Selvey of the Charlotte-Mecklenburg Police Department conducted surveillance in the 1600 block of Remount Road. Both officers were aware of the area's reputation for drug activity and had previously made drug arrests in the vicinity. While positioned in an unmarked car, the officers observed three black males standing in front of a vacant duplex across the street. Officer McManus testified that he observed several "meetings" whereby the three men were approached by individuals on foot who would speak briefly to one of the black males. During each "meeting," the individual would disappear behind the duplex with the same black male, later identified as the defendant. The other two males remained in front of the duplex as if acting as lookouts. Each time the defendant reappeared, the other two men conferred with him. Officers McManus and Selvey had observed similar "meetings" during their years on the police force. Based on their training and experience, both officers testified that in their opinions the "meetings" were drug transactions.

Later during the surveillance, the police observed a female approach the three men. Like previous "meetings," the female spoke momentarily with the men and then disappeared behind the duplex with the defendant. After a couple of minutes, Officer McManus saw the defendant and the female cross the street toward a fast food restaurant. They both got into a red Nissan station wagon which was parked in back of the restaurant.

The defendant's car proceeded from the parking lot, across the intersection, and into the lot at 1601 Remount Road. About this time, Officer McManus radioed for the assistance of a marked car. He informed them that he had observed what appeared to be a drug transaction between the defendant and the female passenger and

STATE v. CLYBURN

[120 N.C. App. 377 (1995)]

requested the marked car to conduct an investigative stop of the vehicle. Responding to the call, Officer Thornton pulled his vehicle behind the defendant's car which was already stopped. Officer Thornton asked the defendant and passenger to step out of the car where he frisked the defendant.

Officers Brown and Rutledge also responded to the call. Officer Rutledge frisked the female passenger. At trial, Rutledge testified that the frisks were conducted for the safety of the officers.

Officer Brown conducted a search of the passenger area of the car and found a .357 Magnum handgun in the glove compartment. Defendant was then placed under arrest for carrying a concealed weapon. Following defendant's arrest, a search of the vehicle was conducted and a bag containing thirty-three rocks of crack cocaine was found in the ashtray between the driver and passenger seats. Defendant was then charged with possession with intent to sell and deliver cocaine.

At trial, defendant made a motion to suppress the evidence, which was denied. Defendant then entered a plea of guilty to all charges. Judgments were entered thereon and from the denial of the motion to suppress, defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Simone E. Frier and Special Deputy Attorney General Ellen B. Scouten, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Kevin P. Tully, for defendant-appellant.*

WALKER, Judge.

Defendant's sole assignment of error is that the trial court erred by denying his motion to suppress. Defendant argues that such evidence was obtained as a result of an unlawful search and seizure conducted in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sections 19 and 20 of the North Carolina Constitution. We disagree.

The scope of appellate review of a denial of a motion to suppress is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether those findings of fact in turn support the conclusions of law which are reviewable on appeal. *State v. Cooke*, 306 N.C. 132, 291 S.E.2d 618 (1982). *See State*

*v. Simpson*, 320 N.C. 313, 357 S.E.2d 332, *cert. denied*, 485 U.S. 963, 108 S. Ct. 1230, 99 L. Ed. 2d 430 (1988).

**[1]** The threshold question this Court must decide is whether the investigatory stop of defendant's car was permissible. Police may conduct a brief investigatory stop of an individual or vehicle without probable cause if such stop is based on a reasonable suspicion, supported by specific, articulable facts, that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911 (1968). To determine if the *Terry* standard has been met, the court must examine the totality of the circumstances. *State v. Rinck*, 303 N.C. 551, 559, 280 S.E.2d 912, 919 (1981). Here, the trial court made the following findings of fact:

> (1) At approximately 7:30 to 8:00 P.M. on the 9th day of November, 1993, Officer McManus of the Charlotte Mecklenburg Police Department was conducting surveillance on Remount Road in a known drug activity area. . . .
>
> (2) [D]uring his surveillance of this area of over thirty minutes or more, he observed three black males standing in front of 1633 Remount Road, a vacant duplex.
>
> On three separate occasions one of the black males would go behind the vacant duplex, come back, and have some interaction with another person who arrived on foot. The two black males looked as thought [sic] they were keeping a lookout.
>
> Officer McManus testified from a distance of 150 yards he was able to identify the Defendant as the individual black male who went behind the building on these occasions.
>
> (3) Presently a female came up and approached the three black males. The Defendant went behind the building. Then the female and the Defendant left and entered a vehicle. The Defendant was the driver.
>
> (4) They stopped after traveling some distance and Officer McManus was in pursuit. Meantime he had radioed for backup and had communicated his surveillance information via radio that he, Officer McManus, was of the opinion that he had observed a hand-to-hand drug transaction.

Defendant argues that these findings do not support the trial court's conclusion that "[a]t the time of the search, the officers had an articulable suspicion communicated to them by Officer McManus that

this vehicle might contain, this vehicle or these occupants, might contain contraband materials."

While no one of these circumstances alone necessarily satisfies constitutional requirements, when considered in their totality, the officers had reasonable suspicion to make an investigatory stop of defendant's vehicle. Our Supreme Court has held that articulable facts known to the officers at the inception of the investigatory stop together with any rational inferences that may be drawn from those facts must be considered when determining whether the *Terry* standard has been met. *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143 (1979).

> Reasonable suspicion is a commonsensical proposition. Courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street. . . . While the defendant's mere presence in a high crime area is not by itself enough to raise reasonable suspicion, an area's propensity toward criminal activity is something that an officer may consider.

*U.S. v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993). Therefore, we find that the officers' stop of the defendant's vehicle was supported by reasonable suspicion.

[2] Defendant objects to the admission of the .357 Magnum handgun found in the glove compartment contending that such evidence was the fruit of an unlawful warrantless search of his vehicle. To the contrary, the search of defendant's automobile was justified under the United States Supreme Court decision *Michigan v. Long*, 463 U.S. 1032, 77 L. Ed. 2d 1201 (1983). The standard articulated by the Supreme Court in *Long* states:

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief . . . that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Long*, 463 U.S. at 1049-1050, 77 L. Ed. 2d at 1220 (citations omitted). Here, the officers frisked the defendant and the female passenger. Thereafter, the defendant grew belligerent and was placed in the rear seat of the vehicle. From the defendant's behavior, the officers could reasonably assume that defendant was potentially dangerous. The officers also reasonably believed that the defendant may be armed

because of his suspected involvement in drug trafficking. In determining whether the suspect may be armed, an officer is entitled to formulate "common-sense conclusions about the modes or patterns of operation of certain kinds of lawbreakers." *United States v. Cortez*, 449 U.S. 411, 418, 66 L. Ed. 2d 621, 629 (1981). In a similar case, our Supreme Court upheld a limited search of defendant where officers suspected that defendant was involved in drug trafficking and may be armed. *State v. Butler*, 331 N.C. 227, 415 S.E.2d 719 (1992). *See also U.S. v. Rodriquez*, 750 F. Supp. 1272, *aff'd., subnom., U.S. v. Rodriquez-Morales*, 972 F.2d 343 (4th Cir. 1992) (holding that the officer had reasonable belief that the occupants of the vehicle were armed, where the officer knew that drug dealers are frequently armed, and therefore, frisk of the vehicle was permissible). Accordingly, the search of defendant's car was justified as a protective frisk.

[3] Defendant also objects to the introduction of drugs found in an ashtray between the driver and passenger seats during the second search of the vehicle. An officer who lawfully arrests the occupant of a vehicle may search the passenger area of the vehicle, including consoles and other receptacles, incident to arrest. *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768 (1981). Following the discovery of a .357 Magnum handgun, the officers placed the defendant under arrest for possession of a concealed weapon. Incident to the arrest, the officers were justified in searching the passenger area of the vehicle, including receptacles such as an ashtray.

In sum, the trial court's findings are based on competent evidence. Therefore, the trial court properly concluded that defendant's motion to suppress should be denied.

Affirmed.

Judges COZORT and McGEE concur