DAVIS, Judge.
 

 *121
 
 Cecil Jackson Travis, III ("Defendant") appeals from the judgment entered upon his convictions of possession of drug paraphernalia, simple possession of a Schedule IV controlled substance, and possession with intent to manufacture, sell, or deliver a Schedule II controlled substance. On appeal, he contends that the trial court erred by denying his motion to suppress. After careful review, we affirm.
 

 Factual Background
 

 On 8 May 2013 at around 2:00 p.m., Officer Chris Header ("Officer Header"), a vice narcotics officer with the Mebane Police Department, was in his unmarked patrol vehicle in the parking lot of a post office in downtown Mebane, North Carolina. From his vehicle, he observed a van being driven by Defendant pull into the parking lot. Officer Header knew Defendant as he had previously worked for Officer Header as an informant and had "purchased narcotics for [him] ... in a controlled capacity." Officer Header then observed the following:
 

 [Defendant] pulled up to a[sic] passenger side of a maroon SUV.... [T]he passenger ... of the [SUV] roll[ed] down its window. [Defendant] had his window down and they both reached out and appeared to exchange something. And just after the exchange they both returned their arms to the vehicle[s] and then immediately left. So they were there less than a minute.
 

 Based on his training and experience as a vice narcotics officer, Officer Header believed he had witnessed a "[h]and-to-hand" drug transaction in which "narcotics had been traded for money." As a result, he sent out a request over his radio for any nearby patrol officer to stop Defendant's vehicle.
 

 Lieutenant Jeremiah Richardson ("Lt. Richardson") was in his office at the police station in downtown Mebane when he heard Officer Header's request over his radio. In response, he left his office, got into his patrol vehicle, and began backing out of the station parking lot. As he was doing so, he observed Defendant's van drive past him.
 

 *122
 
 Lt. Richardson pursued Defendant's vehicle and ultimately initiated a traffic stop of the van. A subsequent search of the vehicle led to the discovery of drug paraphernalia, less than half an ounce of marijuana, and 26 oxycodone pills. As a result, Defendant was placed under arrest.
 

 On 27 May 2014, Defendant was indicted for (1) possession of drug paraphernalia; (2) simple possession of a Schedule IV controlled substance; and (3) possession with intent to manufacture, sell, or deliver a Schedule II controlled substance. On 27 October 2014, Defendant filed a motion to suppress all evidence obtained as a result of the traffic stop based on his assertion that no reasonable suspicion existed to justify the stop of his vehicle.
 

 *676
 
 A hearing on Defendant's motion to suppress was held on 29 October 2014 before the Honorable A. Robinson Hassell. At the hearing, the State presented the testimony of Officer Header and Lt. Richardson. Defendant did not offer any evidence.
 

 After considering the State's evidence and the arguments of counsel, the trial court denied Defendant's motion. A brief recess was taken during which Defendant entered into a plea agreement with the State, reserving his right to appeal the trial court's denial of his motion to suppress. Upon resumption of the proceedings, Defendant pled guilty to the charges against him and was sentenced to 5-15 months imprisonment. The sentence was suspended, and Defendant was placed on 24 months supervised probation. Defendant gave oral notice of appeal in open court.
 

 Analysis
 

 I. Reasonable Suspicion
 

 Defendant's first argument on appeal is that his motion to suppress was improperly denied based on a lack of reasonable suspicion to justify the investigatory stop of his vehicle. "When a motion to suppress is denied, this Court employs a two-part standard of review on appeal: The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law."
 
 State v. Jackson,
 

 368 N.C. 75
 
 , 78,
 
 772 S.E.2d 847
 
 , 849 (2015) (citation and quotation marks omitted).
 

 It is well established that
 

 [t]he Fourth Amendment protects the right of the people against unreasonable searches and seizures. It is
 
 *123
 
 applicable to the states through the Due Process Clause of the Fourteenth Amendment. It applies to seizures of the person, including brief investigatory detentions such as those involved in the stopping of a vehicle.
 

 Only unreasonable investigatory stops are unconstitutional. An investigatory stop must be justified by a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.
 

 A court must consider the totality of the circumstances-the whole picture in determining whether a reasonable suspicion to make an investigatory stop exists. The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an unparticularized suspicion or hunch.
 

 State v. Watkins,
 

 337 N.C. 437
 
 , 441-42,
 
 446 S.E.2d 67
 
 , 69-70 (1994) (internal citations, quotation marks, and ellipses omitted);
 
 see
 

 State v. Watson,
 

 119 N.C.App. 395
 
 , 398,
 
 458 S.E.2d 519
 
 , 522 (1995) ("[A]n officer's experience and training can create reasonable suspicion. Defendant's actions must be viewed through the officer's eyes.").
 

 In the present case, the trial court's order contained the following findings of fact:
 

 1. The State presented two witnesses in this matter, Investigator Chris Header, Mebane Police Department and Lieutenant Jeremiah Richardson, Mebane Police Department.
 

 2. That on May 8, 2013 at 2:00 P.M. Officer Header, Mebane Police Officer, was sitting in a stationary, unmarked vehicle and was a member of the vice/narcotics unit.
 

 3. That this officer was in a position to observe conduct from a suspect known subjectively to him, and by him, as someone that he had worked with in controlled buys and as someone who had worked for him as an informant involving marijuana and other controlled substances.
 

 4. That Officer Header testified as to familiarity with the defendant's residence and the vehicle or vehicles used by him or members of his family.
 

 *124
 
 5. That the van the defendant occupied on this occasion was recognized by this officer as being one from the defendant's family member.
 

 6. That the officer observed the defendant drive up in this van and park along the passenger side of a maroon sport utility vehicle.
 

 *677
 
 7. That the officer observed arms from each vehicle, including one arm of the defendant, extending to one another and touch hands, without further specificity as to the nature of the transactions.
 

 8. That the officer acknowledged his training and experience of more than five years combined between the Mebane Police Department and the Orange County Sheriff's Department.
 

 9. That the officer testified that in his training and experience, this appeared to be a hand to hand transaction in exchange for controlled substances.
 

 10. That the officer testified that after this hand to hand transaction, both the defendant in his vehicle and the maroon sport utility vehicle each drove off.
 

 11. That there was no testimony or evidence presented that the occupants of either vehicle had gone into or went into the post office at which they were located.
 

 12. That Officer Header, thereafter, reported the transaction and requested assistance to stop the defendant, describing the vehicle he observed the defendant operating and the direction from which he had gone and appeared to be traveling.
 

 13. That Lieutenant Richardson further testified additionally that while in his office at the Mebane Police Department he received the call in [sic] of Officer Header, for whom he had been a supervisor while overseeing the criminal investigative division of the Mebane Police Department.
 

 14. That Lieutenant Richardson testified to his visual confirmation of the vehicle as described by Officer Header and the occupant described, as well.
 

 *125
 
 15. That Lieutenant Richardson testified as to independent knowledge of the defendant as well as the vehicle confirming his visual recognition of each.
 

 16. That both officers testified that no traffic violations appeared to have occurred in their presence to otherwise formulate the basis of the stop.
 

 17. That both officers testified to their knowledge that the public area of federal property of the post office in Mebane, North Carolina, in the downtown area, was not known to be a crime area, but was known to be a public area where vehicles would come and go.
 

 18. That after about two-tenths of a mile the Lieutenant, having entered his vehicle to follow the defendant, stopped the defendant's vehicle.
 

 The trial court then made the following conclusions of law:
 

 1. That based upon the totality of the circumstances, the prior knowledge, particularly of Officer Header in working with this defendant and the vehicle, the fact that this defendant was known to both officers, as well as the vehicle operated by him, the officers' training and experience, specifically Officer Header's, with respect to undercover narcotics activity, investigative techniques, and observations in the field and otherwise, the officers were in a position to recognize on their belief (sic) and suspect when criminal activity appears before them or appears to have occurred.
 

 2. That based upon the totality of the circumstances, under these circumstances, the suspicions of criminal activity articulated by the officers on this occasion were objectively reasonable.
 

 While this is a close case, we believe the trial court's findings of fact support its conclusion that reasonable suspicion existed to stop Defendant's vehicle. Officer Header recognized Defendant as one of his former informants who had previously engaged in controlled purchases of drugs for him. He observed Defendant pull into the post office parking lot and park in a space next to the passenger side of a maroon SUV and then saw "arms from each vehicle, including one arm of the defendant, extending to one another and touch hands...." Both vehicles then
 
 *126
 
 drove off without the occupants of the two vehicles ever having actually gone into the post office. Based on his training and experience as a law enforcement officer for more than five years, Officer Header believed this to be a hand-to-hand transaction in which controlled substances had been exchanged.
 

 On several prior occasions, we have held that reasonable suspicion existed to support an investigatory stop where law enforcement
 
 *678
 
 officers witnessed acts that they believed to be transactions involving the sale of illegal drugs.
 
 See
 

 State v. Mello,
 

 200 N.C.App. 437
 
 , 438,
 
 684 S.E.2d 483
 
 , 485 (2009) (based on officer's training and experience, he believed he had witnessed hand-to-hand controlled substance transaction where two individuals in area known for illegal drug activity "approach[ed] the [defendant's] vehicle putting their hands into the vehicle"),
 
 aff'd per curiam,
 

 364 N.C. 421
 
 ,
 
 700 S.E.2d 224
 
 (2010) ;
 
 State v. Carmon,
 

 156 N.C.App. 235
 
 , 240-41,
 
 576 S.E.2d 730
 
 , 735 (reasonable suspicion existed to conduct investigatory stop where (1) officer observed defendant in grocery store parking lot "receive a softball-size package from a man in a conspicuous car at night"; (2) defendant "appeared to be nervous"; and (3) officer's "past experience in observing drug transactions" led him to believe a drug transaction had occurred),
 
 aff'd per curiam,
 

 357 N.C. 500
 
 ,
 
 586 S.E.2d 90
 
 (2003) ;
 
 State v. Summey,
 

 150 N.C.App. 662
 
 , 664-67,
 
 564 S.E.2d 624
 
 , 626-28 (2002) (officer conducting surveillance of residence in area known for past drug activity had reasonable suspicion for investigatory stop after observing "a course of conduct which was characteristic of a drug transaction"; officer saw defendant's truck pull up to house and man from house approach and "appear[ ] to engage in a brief conversation with the driver ... [and a] few moments later, the man returned to the yard and the truck drove away");
 
 State v. Clyburn,
 

 120 N.C.App. 377
 
 , 378-81,
 
 462 S.E.2d 538
 
 , 539-41 (1995) (officer conducting surveillance during evening in area of known drug activity had reasonable suspicion based on his training and experience to conduct investigatory stop of defendant where officer observed defendant and other individuals meet briefly behind vacant duplex and officer "was of the opinion that he had observed a hand-to-hand drug transaction").
 

 Admittedly, as Defendant notes, the present incident took place in broad daylight in the parking lot of a public building rather than in an area known for drug activity (as in
 
 Mello, Summey
 
 , and
 
 Clyburn
 
 ) or at night (as in
 
 Carmon
 
 and
 
 Clyburn
 
 ). Moreover, there is no indication that Defendant was even aware of Officer Header's presence much less that he displayed signs of nervousness or took evasive action to avoid Officer Header. However, while courts making a determination of whether
 
 *127
 
 reasonable suspicion existed to justify an investigative stop may certainly take into account factors such as past criminal activity in the area, time of day, and nervousness or evasive action by the defendant, none of these individual circumstances are indispensable to a conclusion that an investigatory stop was lawful. Rather, courts must consider the totality of the circumstances of each case.
 

 Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. Only some minimal level of objective justification is required. This Court has determined that the reasonable suspicion standard requires that the stop be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. Moreover, a court must consider the totality of the circumstances-the whole picture in determining whether a reasonable suspicion exists.
 

 State v. Barnard,
 

 362 N.C. 244
 
 , 247,
 
 658 S.E.2d 643
 
 , 645 (internal citation, quotation marks, brackets, and ellipses omitted),
 
 cert. denied,
 

 555 U.S. 914
 
 ,
 
 129 S.Ct. 264
 
 ,
 
 172 L.Ed.2d 198
 
 (2008).
 

 "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. While something more than a mere hunch is required, the reasonable suspicion standard demands less than probable cause and considerably less than preponderance of the evidence."
 
 State v. Williams,
 

 366 N.C. 110
 
 , 116-17,
 
 726 S.E.2d 161
 
 , 167 (2012) (internal citations and quotation marks omitted).
 

 The actions of Defendant and the occupant of the maroon SUV may or may not have appeared suspicious to a layperson. But they were sufficient to permit a reasonable inference by a trained law enforcement
 
 *679
 
 officer such as Officer Header that a hand-to-hand transaction of an illegal substance had occurred. Moreover, Officer Header knew Defendant and recognized his vehicle, having had past experience with him as an informant in connection with controlled drug transactions.
 
 See
 

 id.
 
 at 117,
 
 726 S.E.2d at 167
 
 ("Viewed individually and in isolation, any of these facts might not support a reasonable suspicion of criminal activity. But viewed as a whole by a trained law enforcement officer who is familiar with drug trafficking ... the responses [of the defendant's accomplice]
 
 *128
 
 were sufficient to provoke a reasonable articulable suspicion that criminal activity was afoot...." (citation, quotation marks, and ellipses omitted)). While we recognize that a number of entirely innocent explanations could exist for the conduct observed by Officer Header, that fact alone does not necessarily preclude a finding of reasonable suspicion.
 
 See
 
 id.
 

 ("A determination that reasonable suspicion exists need not rule out the possibility of innocent conduct." (citation, quotation marks, and ellipses omitted)).
 

 In sum, on these facts we cannot say that the determination made by Officer Header based on the conduct he observed in accordance with his training and experience failed to rise beyond the level of an unparticularized suspicion or a mere hunch. Accordingly, the trial court did not err in finding that based upon the totality of the circumstances reasonable suspicion existed to stop Defendant's vehicle.
 

 II. Findings of Fact
 

 In his final argument, Defendant asserts that several of the findings of fact made by the trial court were merely recitations of testimony by the State's witnesses. Specifically, he contends that because findings of fact 4, 9, 10, 13, 14, 15, 16, and 17 simply recite the testimony of Officer Header and Lt. Richardson they are not proper "findings" sufficient to support the trial court's conclusions of law. Defendant is correct as a general proposition that "[a]lthough ... recitations of testimony may properly be included in an order denying suppression, they cannot substitute for findings of fact resolving material conflicts."
 
 State v. Lang,
 

 309 N.C. 512
 
 , 520,
 
 308 S.E.2d 317
 
 , 321 (1983). The flaw in Defendant's argument, however, is that such recitation of testimony is insufficient only where a material conflict actually exists on that particular issue.
 

 [The defendant] argues that to the extent findings of fact 4, 6, and 8 summarize defendant's testimony, they are not proper findings of fact because they are mere recitations of testimony, citing
 
 Long v. Long,
 

 160 N.C.App. 664
 
 ,
 
 588 S.E.2d 1
 
 (2003), and
 
 Chloride, Inc. v. Honeycutt,
 

 71 N.C.App. 805
 
 ,
 
 323 S.E.2d 368
 
 (1984). In those cases, the findings were inadequate because the trial court did not, with a mere recitation of testimony, resolve the conflicts in the evidence and actually find facts. That is not, however, the case here.
 

 Praver v. Raus,
 

 220 N.C.App. 88
 
 , 92,
 
 725 S.E.2d 379
 
 , 382 (2012) (select internal citation omitted).
 

 *129
 
 Indeed, where there is no material conflict in the evidence as to a certain fact, the trial court is not required to make any finding at all as to that fact.
 
 See
 

 State v. Smith,
 

 135 N.C.App. 377
 
 , 380,
 
 520 S.E.2d 310
 
 , 312 (1999) ("After conducting a hearing on a motion to suppress, a trial court should make findings of fact that will support its conclusions as to whether the evidence is admissible. If there is no conflict in the evidence on a fact, failure to find that fact is not error. Its finding is implied from the ruling of the court." (citation and quotation marks omitted)).
 

 Here, Defendant has not referred us to the existence of any material conflicts in the evidence concerning the recited testimony set out in findings 4, 9, 10, 13, 14, 15, 16, or 17.
 
 See
 

 State v. Baker,
 

 208 N.C.App. 376
 
 , 384,
 
 702 S.E.2d 825
 
 , 831 (2010) ("[W]e hold that, for purposes of [a motion to suppress], a material conflict in the evidence exists when evidence presented by one party controverts evidence presented by an opposing party such that the outcome of the matter to be decided is likely to be affected."). Therefore, Defendant's argument on this issue is overruled.
 
 [1]
 

 *680
 

 Conclusion
 

 For the reasons stated above, we affirm the trial court's order denying Defendant's motion to suppress.
 

 AFFIRMED.
 

 Judges STEPHENS and STROUD concur.
 

 [1]
 

 We do, however, take this opportunity to remind the trial courts of this State that even with regard to undisputed facts the better practice when entering a written order ruling on a motion to suppress is to make actual findings based on the testimony of witnesses rather than merely reciting the testimony of those witnesses.