IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-637

Filed 1 October 2024

Mitchell County, No. 20 CRS 50118

STATE OF NORTH CAROLINA

v.

WARREN DOUGLAS JACKSON, Defendant.

Appeal by Defendant from judgment entered 14 September 2022 by Judge Peter B. Knight in Mitchell County Superior Court. Heard in the Court of Appeals 10 January 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General Wendy J. Lindberg, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S. Zimmer, for Defendant-Appellant.*

CARPENTER, Judge.

Warren Douglas Jackson ("Defendant") appeals from judgment after a jury convicted him of possessing methamphetamine and possessing drug paraphernalia. On appeal, Defendant argues that the trial court erred by denying his motion to suppress evidence obtained from his car, and his convictions should therefore be reversed. After careful review, we disagree with Defendant and discern no error.

## I. Factual & Procedural Background

On 1 March 2021, a Mitchell County grand jury indicted Defendant for possessing methamphetamine and possessing drug paraphernalia. On 3 August 2022, Defendant filed a motion to suppress evidence obtained from his car. On 13 September 2022, the trial court heard Defendant's motion, and the evidence tended to show the following.

On 31 March 2020, Lieutenant Beam of the Mitchell County Sheriff's Office responded to a call about a suspicious vehicle. The caller stated that a Volkswagen Bug entered a private trail on the caller's property. When Lieutenant Beam arrived at the trail, several individuals stopped him and said they saw a car and were "concern[ed] about it."

Lieutenant Beam then spoke with the caller. The caller said the Bug drove onto his unpaved logging trail and had "not come back down." Lieutenant Beam, in his four-wheel-drive truck, drove up to the end of the trail, where he found Defendant, a female companion ("Passenger"), and Defendant's Volkswagen Bug (the "Bug") covered in mud and dirt. Lieutenant Beam radioed his location to dispatch, and dispatch told him another officer was on the way.

Lieutenant Beam asked Defendant and Passenger for identification and if they had permission to be on the property. Defendant and Passenger each gave Lieutenant Beam their driver's license, and neither of them knew they were on private property; they were "just out riding around."

Lieutenant Beam "talked to them for a few minutes, and the way both [Defendant] and [Passenger] were acting made [Beam] really nervous. They were just moving around a lot. [Beam] couldn't get them to be still." Lieutenant Beam's backup deputy, Deputy Hilemon, arrived at the entrance of the trail shortly after being dispatched. Deputy Hilemon's car, however, could not make it up the trail to meet Lieutenant Beam.

Lieutenant Beam then asked Defendant and Passenger if they could drive the Bug back down the trail so that Lieutenant Beam could meet Deputy Hilemon and finish the investigation at the bottom of the trail. Defendant and Passenger "agreed" and drove the Bug down the trail. Lieutenant Beam drove down separately, and he still held Defendant and Passenger's driver's licenses.

While driving to the bottom of the trail, Lieutenant Beam discovered that Passenger had outstanding warrants for her arrest. Accordingly, Deputy Hilemon arrested Passenger when she and Defendant reached the bottom of the trail. Lieutenant Beam, who still had Defendant's driver's license, then asked Defendant to step out of the Bug and if he had anything illegal in the car. Defendant shrugged his shoulders and said, "you're welcome to look." Lieutenant Beam searched the Bug and found what appeared to be methamphetamine.

On 13 September 2022, the trial court issued a written order (the "Order") denying Defendant's motion to suppress. The State tried Defendant on 14 September 2022. That same day, the jury found Defendant guilty of possessing

methamphetamine and possessing drug paraphernalia. The trial court sentenced Defendant to a minimum of nine and a corresponding maximum of twenty months of imprisonment, suspended for eighteen months of supervised probation. Defendant timely appealed.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III. Issue

The issue on appeal is whether the trial court erred by denying Defendant's motion to suppress.

## IV. Analysis

On appeal, Defendant challenges the Order by arguing that: (1) certain findings of fact are unsupported by competent evidence; and (2) several conclusions of law are erroneous. We disagree with Defendant.

### A. Standard of Review

We review a motion-to-suppress order to determine "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Travis*, 245 N.C. App. 120, 122, 781 S.E.2d 674, 676 (2016) (quoting *State v. Jackson,* 368 N.C. 75, 78, 772 S.E.2d 847, 849 (2015)). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *State v. Ashworth*, 248 N.C. App. 649, 651, 790

S.E.2d 173, 176 (2016) (quoting *State v. Chukwu*, 230 N.C. App. 553, 561, 749 S.E.2d 910, 916 (2013)).

Officer testimony is usually competent evidence, as "[w]e defer to the trial court's assessment of the officer's credibility . . . ." *State v. Jacobs*, 290 N.C. App. 519, 523, 892 S.E.2d 495, 499 (2023) (alteration in original) (quoting *State v. Salinas*, 214 N.C. App. 408, 411, 715 S.E.2d 262, 264 (2011)). And if a trial court's findings are supported by competent evidence, "they are binding on appeal, even if there is evidence to the contrary." *State v. Green*, 194 N.C. App. 623, 630, 670 S.E.2d 635, 640 (2009).

We review conclusions of law de novo. *State v. Edwards*, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648 (2007). Under a de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

We classify findings of fact and conclusions of law by their substance; the labels used by the trial court "will not defeat appellate review." *City of Charlotte v. Heath*, 226 N.C. 750, 755, 40 S.E.2d 600, 604 (1946). Thus, even if labeled as findings of fact, we will treat legal conclusions as such, and vice versa. *See Harris v. Harris*, 51 N.C. App. 103, 107, 275 S.E.2d 273, 276 (1981).

**B. Challenged Findings of Fact**

On appeal, Defendant challenges findings of fact 11, 13, 14, 20, 21, 22, and conclusion of law 25. The challenged portions of these findings and conclusions are as follows.

Finding 11 states that Defendant and Passenger were acting "very nervous and were moving around." Finding 13 states that in order to "continue his investigation of the apparent trespass in a more safe or secure location," Lieutenant Beam asked Defendant and Passenger if they would drive to the bottom of the trail. Finding 14 states that Defendant and Passenger "agreed" to drive down the trail. Finding 20 states that Lieutenant Beam was investigating an "apparent trespass." Finding 21 states that Defendant and Passenger's nervousness and quick movements concerned Lieutenant Beam.

Finding 22 states that Defendant voluntarily consented to the search of his car. Conclusion 25, although labeled a conclusion, is a finding of fact; it also states that Defendant voluntarily consented to the search of his car. *See State v. Hall*, 268 N.C. App. 425, 429, 836 S.E.2d 670, 674 (2019) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 2047–48, 36 L. Ed. 2d 854, 862–63 (1973)) (stating that consent determinations under the Fourth Amendment are factual).

In sum, we conclude that each challenged finding is supported by competent evidence because each finding is supported by probative testimony from Lieutenant Beam, and we defer to the trial court's assessment of Lieutenant Beam's credibility.

*See Jacobs*, 290 N.C. App. at 523, 892 S.E.2d at 499.  Nonetheless, we will separately address the challenged findings below.

### 1.  Findings 11 & 21

These findings both state Defendant and Passenger were acting nervous, which made Lieutenant Beam nervous.  At the motion hearing, Lieutenant Beam testified that he "talked to them for a few minutes, and the way both [Defendant] and [Passenger] were acting made [Beam] really nervous.  They were just moving around a lot.  [He] couldn't get them to be still."

Lieutenant Beam's testimony "is evidence that a reasonable mind might accept as adequate to support the finding" that Defendant and Passenger were acting nervously.  *See Ashworth*, 248 N.C. App. at 651, 790 S.E.2d at 176.  Further, Lieutenant Beam's testimony supports a finding that Defendant and Passenger's behavior made Beam nervous.  *See id.* at 651, 790 S.E.2d at 176.  Therefore, findings 11 and 21 are supported by competent evidence.  *See Travis*, 245 N.C. App. at 122, 781 S.E.2d at 676.

### 2.  Findings 13 & 20

Defendant challenges these findings by arguing that no evidence shows that Lieutenant Beam was investigating an "apparent trespass."  On the contrary, Lieutenant Beam testified that the owner of the trail saw an unknown car enter the trail and had "not come back down."  Moreover, Lieutenant Beam testified that several other individuals saw a car, and they were "concern[ed] about it."

Lieutenant Beam's testimony here is also "evidence that a reasonable mind might accept as adequate to support the finding" that Defendant and Passenger were "apparent[ly]" trespassing on the trail. *See Ashworth*, 248 N.C. App. at 651, 790 S.E.2d at 176. Accordingly, findings 13 and 20 are supported by competent evidence. *See Travis*, 245 N.C. App. at 122, 781 S.E.2d at 676.

### 3. Finding 14

Defendant challenges this finding by arguing that there is insufficient evidence to support that he agreed to move down the trail. According to Defendant, he did not "agree" to drive to the bottom of the trail; he was complying with Lieutenant Beam's order.

Because Lieutenant Beam was a law-enforcement officer, and because Lieutenant Beam held Defendant's driver's license, Defendant's assertion could have merit. Indeed, these facts are probative as to whether Defendant was seized under the Fourth Amendment when he "agreed" to drive to the bottom of the trail.

But here, we are analyzing whether this finding is supported by competent evidence, and the competent-evidence standard is a low bar. *See Green*, 194 N.C. App. at 630, 670 S.E.2d at 640 (stating that findings supported by competent evidence "are binding on appeal, even there if there is evidence to the contrary"). Accordingly, finding 14 is supported by competent evidence because Lieutenant Beam specifically testified that Defendant and Passenger agreed to drive to the bottom of the trail. *See Ashworth*, 248 N.C. App. at 651, 790 S.E.2d at 176.

### 4. Finding 22 & Conclusion 25

In this finding and conclusion, Defendant argues that the trial court erred by finding that he consented to the search of his car. Although consent is a factual inquiry, *see Hall*, 268 N.C. App. at 429, 836 S.E.2d at 674, Defendant makes a per se legal argument. Specifically, Defendant argues that his consent was necessarily involuntary because he was unreasonably seized when he gave it.

For this argument, Defendant cites *State v. Parker*, 256 N.C. App. 319, 327, 807 S.E.2d 617, 622 (2017), which cites *State v. Myles*, 188 N.C. App. 42, 51, 654 S.E.2d 752, 758 (2008), which cites *Florida v. Royer*, 460 U.S. 491, 507–08, 103 S. Ct. 1319, 1329, 75 L. Ed. 2d 229, 243 (1983) (plurality opinion). In *Royer*, the Supreme Court held that because the defendant "was being illegally detained when he consented to the search of his luggage, . . . [his] consent was tainted by the illegality and was ineffective to justify the search." *Id.* at 507–08, 103 S. Ct. at 1329, 75 L. Ed. 2d at 243.

So to discern whether the trial court properly found that Defendant consented to Lieutenant Beam's search, we must discern whether Defendant was illegally seized when he consented. *See id.* at 507–08, 103 S. Ct. at 1329, 75 L. Ed. 2d at 243. Because Defendant's challenged conclusions of law hinge on the same question, we will examine the seizure question more thoroughly in our forthcoming conclusion-of-law discussion. We disagree with Defendant, however: He was not unreasonably seized

when he consented to Lieutenant Beam's search. Therefore, the trial court did not err by finding that Defendant consented to the search.

## C. Challenged Conclusions of Law

Defendant challenges conclusions of law 23 and 24, and findings of fact 19 and 21. Finding 19 states that "[i]t was appropriate and necessary" for Lieutenant Beam to relocate Defendant to the bottom of the trail, and finding 21 states that Lieutenant Beam had reasonable suspicion to investigate Defendant. Although not labeled as such, findings 19 and 21 are conclusions of law. *See Harris*, 51 N.C. App. at 107, 275 S.E.2d at 276. Like finding 21, conclusion 23 states that Lieutenant Beam had reasonable suspicion to investigate Defendant. Conclusion 24 states that Lieutenant Beam's investigation was "not improperly extended."

Defendant argues that these conclusions are wrong under the Fourth Amendment of the United States Constitution and Article I, Section 20 of the North Carolina Constitution. Because these constitutional provisions are analogous, we can resolve Defendant's state and federal concerns through a single Fourth Amendment analysis. *See State v. Miller*, 367 N.C. 702, 706, 766 S.E.2d 289, 292 (2014) (citing *State v. Garner*, 331 N.C. 491, 506–07, 417 S.E.2d 502, 510 (1992)) ("In construing these analogous provisions together, we have held that nothing in the text of Article I, Section 20 calls for broader protection than that of the Fourth Amendment.").

## 1. The Fourth Amendment

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment applies to the States through the Fourteenth Amendment. *See State v. Campbell*, 359 N.C. 644, 659, 617 S.E.2d 1, 11 (2005).

Under the Fourth Amendment, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497, 509 (1980). Freedom of movement is restrained by a show of authority "'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *State v. Isenhour*, 194 N.C. App. 539, 543, 670 S.E.2d 264, 267 (2008) (quoting *Mendenhall*, 446 U.S. at 553, 100 S. Ct. at 1877, 64 L. Ed. 2d at 509). Whether a reasonable person would feel "free to leave" a police encounter is determined by analyzing the totality of circumstances. *Id.* at 543, 670 S.E.2d at 267–68.

A seizure, however, is reasonable if the seizing officer has probable cause to believe the seized citizen committed a crime. *See United States v. Watson*, 423 U.S. 411, 423–24, 96 S. Ct. 820, 827–28, 46 L. Ed. 2d 598, 608–09 (1976). A *Terry* stop, a limited form of seizure, is also reasonable under the Fourth Amendment. *State v. Mangum*, 250 N.C. App. 714, 720, 795 S.E.2d 106, 113 (2016) ("In *Terry*, the United States Supreme Court held that police officers may initiate a brief, investigatory stop of an individual when 'specific and articulable facts . . . , taken together with rational

inferences from those facts, reasonably warrant that intrusion.'" (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968))).

A *Terry* stop is appropriate "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396–97, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680, 686 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621, 629 (1981)). Put differently, a *Terry* stop is a reasonable seizure under the Fourth Amendment if the seizing officer has "reasonable suspicion."

The reasonable-suspicion standard is lower than the probable-cause standard; reasonable suspicion requires less evidence than probable cause. *State v. Wainwright*, 240 N.C. App. 77, 84, 770 S.E.2d 99, 105 (2015). Probable cause requires a reasonable probability of guilt. *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 2335 n.13, 76 L. Ed. 2d 527, 552 n.13 (1983). But "reasonable suspicion exists when 'the totality of the circumstances—the whole picture' supports the inference that a crime has been or is about to be committed." *Wainwright*, 240 N.C. App. at 84, 770 S.E.2d at 105 (quoting *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 440 (2008)).

A *Terry* stop's duration is governed by the "mission" of the stop and the "related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S. Ct. 1609, 1614, 191 L. Ed. 2d 492, 498 (2015). In other words, a *Terry* stop may last no longer than

is necessary to confirm or dismiss the suspicion that warranted the stop and to "attend to related safety concerns." *See id.* at 354, 135 S. Ct. at 1614, 191 L. Ed. 2d at 498.

Regarding related safety concerns, "an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely . . . ." *State v. Johnson*, 279 N.C. App. 475, 484, 865 S.E.2d 673, 680 (2021) (quoting *State v. Bullock*, 370 N.C. 256, 258, 805 S.E.2d 671, 673 (2017)). Therefore, "time devoted to officer safety is time that is reasonably required to complete that mission." *Id.* at 484, 865 S.E.2d at 680 (quoting *Bullock*, 370 N.C. at 262, 805 S.E.2d at 676).

### 2. Criminal Trespass

Criminal trespass requires a defendant to enter property without authorization, and the defendant must have had some indication that she should not have entered the property. *See* N.C. Gen. Stat. §§ 14-159.12–.13 (2023). First-degree trespass applies, for example, when the defendant enters the "premises of another so enclosed or secured as to demonstrate clearly an intent to keep out intruders." *Id.* § 14-159.12(a)(1). And second-degree trespass applies, for example, when the defendant enters "the premises of another after the person has been notified not to enter or remain there by the owner." *Id.* § 14-159.13(a)(1).

### 3. Application

Here, we must first determine whether Lieutenant Beam seized Defendant before we can determine whether any seizure was reasonable. *See* U.S. CONST.

amend. IV. When Lieutenant Beam first approached Defendant and Passenger on the trail, a reasonable person in Defendant's situation may have felt free to leave. *See Isenhour*, 194 N.C. App. at 543, 670 S.E.2d at 267.

Nonetheless, a reasonable person in Defendant's situation would not have felt free to leave once Lieutenant Beam had Defendant's driver's license. *See id.* at 543, 670 S.E.2d at 267. At that point, if Defendant wanted to leave, he would have needed to do so without his driver's license. No reasonable person would have done so. Further, after Deputy Hilemon arrested Passenger at the bottom of the trail, Lieutenant Beam still had Defendant's driver's license, and Lieutenant Beam then asked Defendant if he had anything illegal in the car.

At this point, a reasonable person in Defendant's shoes would feel compelled to stay. *See id.* at 543, 670 S.E.2d at 267. And immediately after Lieutenant Beam inquired about contraband in the car, Defendant told Lieutenant Beam that he was "welcome to look." Accordingly, Defendant was seized when he consented to the search. *See id.* at 543, 670 S.E.2d at 267. So the next question is whether Defendant was reasonably seized.

Because Lieutenant Beam seized Defendant for investigatory purposes, we must discern whether Lieutenant Beam had reasonable suspicion. *See Mangum*, 250 N.C. App. at 720, 795 S.E.2d at 113. And if Lieutenant Beam had reasonable suspicion, we must discern whether the seizure lasted longer than necessary to

confirm or dismiss the suspicion. *See Rodriguez*, 575 U.S. at 354, 135 S. Ct. at 1614, 191 L. Ed. 2d at 498.

Lieutenant Beam arrived at the trail to investigate an alleged trespass. On arrival, Lieutenant Beam spoke to several concerned neighbors about a suspicious car, and he spoke to the trail owner, who said an unauthorized car drove up his trail and "not come back down." This evidence is enough to support reasonable suspicion because it supports an "inference that a crime ha[d] been or [wa]s about to be committed." *See Wainwright*, 240 N.C. App. at 84, 770 S.E.2d at 105; N.C. Gen. Stat. §§ 14-159.12–.13. Indeed, this evidence supports a reasonable probability of trespass, so Lieutenant Beam actually had probable cause to suspect that Defendant was trespassing. *See Gates*, 462 U.S. at 243 n.13, 103 S. Ct. at 2335 n.13, 76 L. Ed. 2d at 552 n.13.

The crux of this case, however, is whether Lieutenant Beam confirmed or dismissed his suspicion before Defendant consented to a search of the car. *See Rodriguez*, 575 U.S. at 354, 135 S. Ct. at 1614, 191 L. Ed. 2d at 498. It is true that Defendant told Lieutenant Beam that he did not know he was on private property. Without more, this could have dispelled Lieutenant Beam's suspicion of trespass. *See* N.C. Gen. Stat. § 14-159.12–.13. But it is also true that Defendant could have lied to Lieutenant Beam: Lieutenant Beam testified that Defendant and Passenger were fidgeting and acting nervous. So Defendant's denial, on its own, was not enough to dispel Lieutenant Beam's reasonable suspicion of trespass.

Further, before Defendant consented to the search, Lieutenant Beam realized that Passenger had an outstanding warrant for her arrest. Although accompanying a wanted criminal is not necessarily indicative of criminal activity, it also does not dispel the suspicion of criminal activity.

Moreover, Lieutenant Beam did not wrongfully extend Defendant's seizure by asking him and Passenger to drive to the bottom of the trail. Rather, Lieutenant Beam's request was merely a safety measure. *See Johnson*, 279 N.C. App. at 484, 865 S.E.2d at 680. Instead of investigating Defendant and Passenger alone at the top of a mountain trail, Lieutenant Beam opted to finish his investigation with his backup officer at bottom of the trail. The time required to drive to the bottom of the trail was negligible, and "time devoted to officer safety is time that is reasonably required to complete th[e] mission." *See id.* at 484, 865 S.E.2d at 680 (quoting *Bullock*, 370 N.C. at 262, 805 S.E.2d at 676).

In other words, when Defendant consented to the search, he was not unreasonably seized by Lieutenant Beam. The mission of Lieutenant Beam's seizure was to investigate an alleged trespass, Lieutenant Beam had reasonable suspicion of trespass, and Defendant and Passenger's behavior did not alleviate Lieutenant Beam's suspicion or any "related safety concerns." *See Rodriguez*, 575 U.S. at 354, 135 S. Ct. at 1614, 191 L. Ed. 2d at 498.

Thus, because Defendant was not unreasonably seized when he consented to the search of his car, his consent was not per se involuntary. *See Royer*, 460 U.S. at

507–08, 103 S. Ct. at 1329, 75 L. Ed. 2d at 243. Accordingly, we affirm the Order's conclusion that Lieutenant Beam maintained reasonable suspicion when Defendant consented to the search, and we affirm the Order's finding that Defendant consented to the search.

## V.    Conclusion

We hold that competent evidence supports the Order's findings of fact, the Order's findings of fact support its conclusions of law, and the Order's conclusions of law are legally correct. Therefore, we discern no error.

NO ERROR.

Chief Judge DILLON and Judge MURPHY concur.